[No. 17484.  Department One.  January 19,. 1923.]

# NORTHERN LIFE INSURANCE COMPANY, *Respondent,* v. ADA L. WALKER, *Individually and as Executrix, etc., Appellant.*[1]

APPEAL (213)—NOTICE—CERTAINTY.  A notice of appeal "from the whole" of an order, copy of which is attached, sufficiently describes the judgment appealed from, although the notice recites only part of the contents of the order.

APPEAL (313-316)—STATEMENT OF FACTS—CERTIFICATE—FORM— ALL MATERIAL FACTS.  A statement of facts should not be stricken or disregarded because it does not contain all the facts and proceedings, if it contains sufficient to represent the only error relied upon for reversal.

APPEAL (276)—STATEMENT OF FACTS—OBJECTIONS AND PROCEEDINGS AT TRIAL.  Notwithstanding a previous record showing a demand and refusal of a jury trial, a party renewing the demand at the trial has· the right to have the last ruling made a part of the record by bill of exceptions or statement of facts, with the view of presenting the error as the sole question for review on appeal.

APPEAL (317, 321) — STATEMENT OF FACTS — CERTIFICATE — ALL MATERIAL FACTS—AGREED FACTS.  Error in refusing a jury trial is reviewable upon appeal under a statement of facts showing the demand and refusal, which the judge certifies contains all the material facts, matters and proceedings heretofore occurring in the cause "which are necessary to a determination of the points involved, but does not contain any evidence taken at the trial"; in view of Rem. Comp. Stat., § 391, providing that the judge shall certify that the statement contains all matters and proceedings occurring in the cause not already a part of the record, "or (as the case may be) such thereof as the parties have agreed to be all that are material therein."

CANCELLATION OF INSTRUMENTS (8)—INSURANCE (126)—REMEDY AT LAW—DEFENSES—SUICIDE.  Since a life insurance company sued on the policy of a suicide, could not seek equitable relief by way of cancellation of the policy upon a ground that would be a complete defense to the action at law, and thereby deprive the plaintiff of the right to a jury trial, it could not effect the same result by commencing an equitable suit to cancel the policy, in which the beneficiary appeared, and counterclaimed on the policy,· tendering an issue on the defense of suicide.

[1]Reported in 212 Pac. 277.

JURY (4)—RIGHT TO JURY TRIAL—LEGAL OR EQUITABLE ACTIONS OR ISSUES. A law action came into being, entitling the defendant to a jury trial, where, under a life insurance policy, non-contestable on the ground of suicide after the expiration of one year, the company, within the year, commenced a suit in equity to cancel the policy of a suicide, in which action the beneficiary counterclaimed on the policy, and the company joined issue on the counterclaim without objection.

SAME (4). The fact that such action was rightfully commenced prior to any law action by the beneficiary on the policy, does not deprive the beneficiary of a jury trial, where she promptly moved to that end, without impairing the effectiveness of the defense of suicide.

SAME (4). The fact that the cross-complaint on the policy in such action was not filed until after the expiration of the year allowed for contesting the policy on the ground of suicide, would not prevent the making of such defense, where the cross-complaint expressly waived any challenge to the defense on account of delay in making the contest.

Appeal from a judgment of the superior court for King county, Brown, J., entered April 22, 1922, in favor of the plaintiff, in an action to cancel a life insurance policy, tried to the court. Reversed.

*C. N. Dickison* and *William L. Bar,* for appellant.

*Preston, Thorgrimson & Turner,* for respondent.

PARKER, J.—As originally commenced in the superior court for King county by the plaintiff insurance company, this was a suit in equity wherein the plaintiff sought a decree of that court canceling a policy issued by the company insuring the life of William Henry Harmon, who had died by suicide, as it is claimed by the company, after the issuance of the policy and before the commencement of the suit. We think it will appear as we proceed that the issues were so developed by the pleadings of the respective parties that the controversy became, in legal effect, a simple action at law wherein the defendant sought recovery upon the policy as the beneficiary thereunder.

The allegations and prayer of the company's complaint, so far as necessary to be here noticed, may be summarized as follows: On September 6, 1920, Harmon made application to the company in writing, upon a form furnished by it, for a policy insuring his life in the sum of $5,000. The application contained, among other things, the following:

"I hereby declare and warrant that all statements and answers in this application are full and correct, and accept and agree for any person claiming under any insurance issued on or by reason of this application as follows: That if the applicant shall engage in the service of any army or navy in time of war (without a written permit from the company) this insurance shall be void except for the amount of the legal reserve on the policy, and that, during one year from date, any insurance issued hereon shall be void in the event of suicide by the insured while sane or insane."

On September 27, 1920, a policy was issued by the company accordingly, to which the application was attached and made a part thereof, containing the following further provision:

"This policy shall be incontestable after one year from date of policy, except for the non-payment of premium or service in army or navy in time of war."

On December 30, 1920, Harmon committed suicide. The policy, by its terms, was made payable upon his death to his "executors, administrators or assigns." On December 31, 1920, the defendant was duly appointed executrix of the last will and testament of Harmon, by the superior court for King county, and she thereupon duly qualified as such executrix. She claims recovery upon the policy, not only as executrix, but also in her own personal right as a beneficiary under the policy by virtue of a purported assignment made by Harmon to her before his death. On March 29, 1921, the defendant presented to the company proof

of the death of Harmon, claiming to be entitled to payment in full of the amount of the policy, both in her own personal right and as executrix. On July 21, 1921, the company filed its complaint in the superior court for King county, praying for a decree "adjudicating that, by reason of the suicide of the insured during one year from its date, said policy became void and that the plaintiff is not indebted to the defendant either in her individual right or as such executrix in any amount whatsoever."

On August 3, 1921, the defendant demurred to the plaintiff's complaint upon the ground that the same does not state facts constituting a cause of action. On October 1, 1921, this demurrer was by the court overruled. On October 19, 1921, the defendant filed her answer, which was also in substance a cross-complaint, wherein she denied that Harmon's death was the result of suicide, denied that the plaintiff was without adequate remedy in law; and alleged affirmatively facts plainly sufficient to entitle her to recovery as beneficiary under the policy, concluding with a prayer accordingly for a money judgment against the defendant upon the policy. On November 21, 1921, without in any manner challenging the defendant's right to seek recovery upon the policy in this action, the plaintiff replied thereto with appropriate denials, putting in issue the affirmative allegations of the answer upon which the defendant sought recovery. On December 9, 1921, the defendant filed in the cause her demand for a jury trial of the issues made as above noticed. On February 23, 1922, upon motion of counsel for the plaintiff, the defendant's demand for a jury trial was denied by the court and an order entered accordingly. On March 15, 1922, the cause came on for trial, at the beginning of which, as shown by a short statement of facts in the record, the defendant again demanded a

jury trial. This demand was then again denied by the court and the defendant forced to trial before the court without a jury as though the cause were triable only as of equitable cognizance, to which the defendant duly excepted. The trial resulted in a final decree being entered by the court on April 22, 1922, awarding to the plaintiff relief as prayed for in its complaint, to wit, cancellation of the policy and decreeing that the plaintiff is not indebted to the defendant in any sum upon the policy. From this disposition of the cause by the superior court, the defendant has appealed to this court.

Respondent insurance company moves that the appeal be dismissed for want of sufficient notice thereof. The notice, in so far as we need here quote its language, reads as follows:

"Please take notice, that the defendant above named hereby appeals to the supreme court of the state of Washington, from the whole of the order and decree which adjudges and decrees. . . . made and entered in this action, by said court on the 22 day of April, 1922, a copy of which order is hereto annexed. . . ."

A copy of the final decree is attached to the notice. The language of the notice which purports to mention what the decree adjudicates refers to certain recitals therein and falls short of stating all that the decree finally adjudicates. This, it is argued, renders the notice ineffectual as an appeal from a final decree. If the language of the notice which refers to what the decree adjudicates stood alone as a specification of what is appealed from, there might be some ground for the argument to rest upon; but the above quoted language of the notice, it seems to us, renders all else as only surplusage, to which we need pay no attention. It plainly tells us that the whole of the decree is appealed

from, referring to the decree by name, by reference to the date of its entry, and by a copy thereof attached to the notice. *State ex rel. Ashmore v. Hunter,* 4 Wash. 637, 30 Pac. 673; *Chaney v. Chaney,* 56 Wash. 145, 105 Pac. 229. We think this notice is sufficient as an appeal from the final decree. We therefore conclude that the motion to dismiss the appeal for want of sufficient notice must be denied.

Respondent moves that the statement of facts be stricken from the record and not considered in the case for any purpose. It is contended that it should be so stricken from the record because not certified to by the trial judge as the law requires. The certificate of the trial judge reads as follows:

" . . . because the foregoing matters and proceedings occurring in this said cause do not appear of record, I the undersigned, the Judge of the Superior Court, who tried said action, have, on due notice, settled and signed this statement of facts, *to the end that the same be made part of the record herein,* this 5th day of July, 1922.

"I certify that the above given statement contains all the material facts, *matters and proceedings heretofore occurring in the cause* and not already a part of the record therein, which are necessary to a determination of the points involved, but does not contain any evidence taken at the trial."

We have italicized certain words of the certificate to be particularly noticed, because, as will presently appear, they are in substance as prescribed by our statute as being sufficient as one form of certifying a bill of exceptions or statement of facts. The statement of facts is very short. It could as well be called a bill of exceptions. Aside from some brief comment by counsel and the court, it simply shows that, upon the calling of the case for trial, and before any evidence had been offered, counsel for appellant renewed her

demand for a jury trial; that this demand was denied by the court; that appellant duly excepted thereto and was compelled to proceed to trial before the court without a jury. Manifestly the statement was prepared and caused to be certified for the sole purpose of preserving for review appellant's claimed error of the trial court in denying her a jury trial. Now it may be that the previous record made of appellant's demand for a jury trial and the entry of the court's order denying that demand was sufficient to preserve for review here her claim of error in that behalf, so as to render it unnecessary for her to renew her demand for a jury trial at the commencement of the trial and have such renewed demand and the denial thereof made of record by bill of exceptions or statement of facts. However, if appellant's counsel did not desire to rest upon the first demand and the denial thereof already made of record, and take the chances of being adjudged as waiving a jury trial by proceeding to trial by the court alone, without further demand or protest at the commencement of the trial, plainly appellant had the right to have her renewed demand and the denial thereof at that time made of record by a bill of exceptions or statement of facts. It seems appropriate, in view of the somewhat elaborate argument made by counsel touching the question, that we now determine whether or not the certificate of the trial judge to the statement of facts is sufficient in law to enable us to review the claim of error made in appellant's behalf that she was without warrant of law denied a jury trial, and assume for the present, as counsel do, that a bill of exceptions or statement of facts is necessary to such review in this case.

It is contended in behalf of respondent that the statement should be stricken and not considered for any purpose because it does not contain all of the proceed-

ings and evidence introduced upon the trial, and several of our decisions are cited to support this contention, some of which when read superficially may seem to lend support to that view of the law. The following cases are so relied upon: *Cadwell v. First Nat. Bank,* 3 Wash. 188, 28 Pac. 365; *In re Holburte's Estate,* 38 Wash. 199, 80 Pac. 294; *State ex rel. Miller v. Seattle,* 45 Wash. 691, 89 Pac. 152; *Taylor v. Andres,* 83 Wash. 684, 145 Pac. 991; *State v. Hankins,* 93 Wash. 124, 160 Pac. 307; *Ingersoll v. Cudihee,* 96 Wash. 515, 165 Pac. 375; *Kahn v. Kahn,* 103 Wash. 26, 173 Pac. 747; *Davidson v. King,* 103 Wash. 379, 174 Pac. 434; *Mauseth v. Slayden,* 104 Wash. 512, 177 Pac. 319; *Downing v. Downing,* 108 Wash. 12, 182 Pac. 561; *Larson v. Seattle,* 121 Wash. 75, 208 Pac. 54.

We think it safe to say that a critical examination of these cases and the records upon which the decisions therein are rested will disclose that in every one of them the question or questions which this court was asked to decide were of such nature that the court was wholly unable to determine whether or not the claimed error or errors had been committed by the trial court, because of the want of a bill of exceptions or statement of facts showing affirmatively that all the "facts, matters and proceedings" bearing upon the claimed error or errors were before this court.

Now manifestly this court does not need to have here before it in this case all or any of the evidence taken upon the trial of this case, in order to see whether or not the trial court committed error prejudicial to appellant by denying her a jury trial. This court is sufficiently advised as to the premise upon which the answer to that question must rest when it is advised by the pleadings of the nature of the action, and by the statement of facts that a timely demand for a jury trial had been made by appellant and by

the court denied, and the trial proceeded with before
the court without a jury, over her protest so made.
In § 391, Rem. Comp. Stat., relating to the manner of
certifying bills of exception and statements of facts,
we read:

"The judge shall certify that the matters and pro-
ceedings embodied in the bill or statement, as the case
may be, *are matters and proceedings occurring in the
cause and that the same are thereby made a part of the
record therein;* and, when such is the fact, he shall
further certify that the same contains all the material
facts, matters and proceedings heretofore occurring in
the cause and not already a part of the record therein,
or (as the case may be) such thereof as the parties
have agreed to be all that are material therein."

We italicize the words of the statute particularly
applicable to our present inquiry. It will be noticed
that the italicized words of the above quoted certificate
of the trial judge are in substance the same as these
italicized words of the statute prescribing one form of
certifying a bill of exceptions or statement of facts.
That this statement of facts, so certified, may be con-
sidered for the purpose of this court's now determin-
ing whether or not the trial court erred in denying
to appellant a jury trial, seems to us to need no argu-
ment or citation of authority other than the statute
itself. However, the following decisions of this court,
wherein short bills of exception or statements of facts
have been considered by the court as being properly
in the record for the purpose of considering some one
or more claimed errors, when certified in such manner
as to render it plain that it was unnecessary to have
all of the proceedings and evidence embodied in a
statement of facts which were not already a part of
the record, we think render it conclusive that this
short statement of facts is properly certified, and in
such form as to enable us to determine the one question

of whether or not appellant was erroneously denied a trial by jury: *Tompson v. Huron Lumber Co.,* 5 Wash. 527, 32 Pac. 536; *Schlotfeldt v. Bull,* 17 Wash. 6, 48 Pac. 343; *Bruce v. Foley,* 18 Wash. 96, 50 Pac. 935; *Lilly v. Eklund,* 37 Wash. 532, 79 Pac. 1107; *Bringgold v. Bringgold,* 40 Wash. 121, 82 Pac. 179; *Smith v. Glenn,* 40 Wash. 262, 82 Pac. 605; *Berens v. Cox,* 70 Wash. 627, 127 Pac. 189.

The word "strike" has been used by both counsel and the court, with reference to the avoiding of the consideration of statements of facts in given cases, in a somewhat indiscriminate and general way as meaning that a given statement of facts should be ignored in the determination of some given assignment of error; so that when we find such word used in that connection by counsel in their motions, or by the court in its decisions, it has come to mean little else than that a given statement of facts is moved to be stricken, or is by the court ordered to be stricken, with reference to the consideration of some particular claimed error or errors. It probably would have been more conducive to clearness and the avoiding of confusion of thought on this subject had the word "strike" been used only by counsel and the court when it was desired to express the contention of counsel or the court's view that a given statement of facts should be stricken from the record because of some defect in the statement or certificate thereto appearing upon the face of the statement or certificate. It has always seemed to the writer that the question of whether or not a statement of facts should be stricken from the record, and the question of whether or not a statement of facts can properly be considered in reviewing some given claim of error, should be treated as separate questions. The former, it would seem, has reference strictly to the elimination of the statement from

the record, which should not be done if it is free from
defects upon its face; while the latter, it would seem,
has reference strictly to the extent the statement may
be available in aid of the consideration of some given
claimed error or errors. However this may be, we are
of the opinion that this statement of facts should not
be stricken from the record, nor should it be ignored
by us in our determination of whether or not appellant
has been erroneously denied a jury trial.

Upon the merits, it is first contended in behalf of ap-
pellant that the complaint of respondent insurance
company does not state facts entitling it to any equit-
able relief, because it is apparent from the facts al-
leged therein that respondent has a complete and ade-
quate remedy at law, in that in a law action by appel-
lant seeking recovery upon the policy respondent may
invoke as a defense all of the facts alleged in its com-
plaint as grounds for the equitable relief it seeks.
This is met by the contention made in behalf of re-
spondent that because of the above quoted incontest-
able clause of the policy respondent would be deprived
of its opportunity to contest the policy upon the ground
of Harmon's suicide if it did not seek cancellation of
the policy either by an independent action in equity,
as it has done, or by making defense upon that ground
in an action at law that might be commenced by ap-
pellant seeking recovery upon the policy within one
year from its date, which opportunity of defense was
not afforded to respondent in this controversy.

We have noticed that the policy was issued on Sep-
tember 27, 1920; that Harmon, as it is alleged, com-
mitted suicide on December 30, 1920; that respondent
commenced this action seeking cancellation of the
policy on July 21, 1921, and that appellant did not
file her answer and cross-complaint seeking recovery
upon the policy until October 19, 1921, a little more

than a year after the date of the policy. Counsel for respondent present an extended and able argument touching the question of its losing its right to contest the policy by a suit in equity or by defense to a law action after the expiration of the year mentioned in the incontestable clause of the policy. As to whether or not such delay in contesting the policy would, under all circumstances, defeat respondent's right of contest upon the ground of suicide, it must be conceded as a very difficult question to satisfactorily answer, in the light of the numerous decisions of the courts touching the subject. If it be the law that the defense of suicide would not be available to respondent after the expiration of the year, in a law action upon the policy by the beneficiary seeking recovery thereon, then it would seem that respondent would have the right to seek relief in equity, as it did by the commencement of this action before the expiration of the year mentioned in the incontestable clause of the policy. Without attempting to solve this particular problem, we shall assume for present purposes that respondent had the right to seek relief in equity at the time it did by the commencement of its suit. Now, assuming that appellant had done nothing more in this action than defend as against respondent's complaint in equity seeking cancellation of the policy, under our present assumption of respondent's right to seek relief in equity at that time, no doubt the trial court would have been fully justified in retaining control over the case and proceeding to final decree therein as one of exclusive equitable cognizance, and thus rightly deprive appellant of a jury trial; but such was not the course pursued by appellant.

We have seen that, while appellant demurred to respondent's complaint in equity, she did not stand upon her demurrer after the overruling of it by the court,

nor did she answer having solely in view the defeat of the equitable relief sought by respondent; but answered upon the merits by such denials, allegations and prayer for affirmative relief in the form of a money judgment upon the policy that her answer became in effect a cross-complaint seeking recovery of a money judgment upon the policy as a complaint in a pure law action; to which respondent, without challenging in any way her right to file such cross-complaint and seek such money judgment in the case, responded by a reply which was in effect simply an answer upon the merits to such cross-complaint. Thus there came into being, by the pleadings of the parties, that which was in legal effect a simple law action, in which appellant sought recovery upon the policy and respondent resisted such recovery.

Now we think it is well settled law that had appellant commenced a law action seeking recovery upon the policy before respondent commenced its suit in equity seeking cancellation of the policy, the latter would have been of no avail whatever to respondent: since it seems plain that respondent in no event had the right to seek equitable relief by way of cancellation of the policy, except upon the ground that it would lose its right to contest the policy upon the ground of suicide at the expiration of the year mentioned in the incontestable clause thereof; and a prior commencement of a law action by appellant seeking recovery upon the policy would have afforded to respondent as full and complete opportunity to contest the policy by way of defense on the ground of suicide as would have been afforded to respondent in an independent suit in equity. It is equally plain that respondent could not, under such circumstances, have successfully sought cancellation of the policy as equitable relief by way of cross-complaint in a pre-

viously commenced law action by the beneficiary seeking recovery thereon. It was so held in *Biermann v. Guaranty Mut. Life Ins. Co.*, 142 Iowa 341, 120 N. W. 963, a case in which equitable relief was sought by the defendant in a law action by way of cross-complaint upon the ground of fraud, the equitable relief so sought being a cancellation of the insurance policy sued upon. Judge Weaver, speaking for the court in that case, made the following very pertinent observations:

"Of course, there is a certain field in which law and equity are said to have concurrent jurisdiction, and this jurisdiction includes a class of cases growing out of alleged accident, mistake, or fraud. But even in this common field courts of equity, though recognizing the existence of their jurisdiction, are generally reluctant to exercise it where the remedy at law appears to be adequate and complete. *Gorman v. Low*, 2 Edw. Ch. (N. Y.) 324; *Robinson v. Chesseldine*, 5 Ill. 332; *Hales v. Holland*, 92 Ill. 494; *Knight v. Hardeman*, 17 Ga. 253. This court has held that equity will not entertain an action to rescind a contract for mistake, unless it appears that an injury will result for which the aggrieved party will have no adequate remedy at law. *Morse v. Beale*, 68 Iowa 463, 27 N. W. 461. So, too, where a court of law has already obtained jurisdiction of a controversy involving an alleged fraud, equity will not interfere. *Nash v. McCathern*, 183 Mass. 345, 67 N. E. 323; *Eaton v. Trowbridge*, 38 Mich. 454; *Sweeny v. Williams*, 36 N. J. Eq. 627. To sustain the position of the appellant herein would be to sanction a practice by which the plaintiff in every action upon an insurance policy, or, indeed, upon every simple matter of contract, may be deprived of his constitutional right to have his cause submitted to a jury."

It would seem that the filing of such a cross-complaint in a law action under our code practice is in substance the same as commencing a suit in equity seeking similar relief.

What we have said thus far we think renders it plain that, in this particular controversy, all that is needed to render whatever relief respondent may be entitled to, fully and effectually obtainable in an action at law upon the policy, is the coming into being of such an action, wherein respondent may have full op-. portunity to present its defense of suicide. It seems to us that such a law action came into being when appellant filed her affirmative answer amounting to a cross-complaint praying for recovery upon the policy and respondent filed its answer thereto. Now, does the fact that the controversy was rightfully initiated as one of equitable cognizance, before the commencement of a law action by appellant seeking recovery upon the policy, as we have assumed for present purposes, call for the court's holding and continuing it as a suit exclusively of that nature, so that there could not be effected a change of it to one at law wherein appellant would be entitled to a jury trial? We think not, provided she, with reasonable promptness, moved to that end without prejudicially impairing the effectiveness of respondent's defense of suicide. Manifestly she did this, since she served and filed her answer and cross-complaint seeking recovery upon the policy within twenty days following the disposition by the court of her demurrer to respondent's complaint, and some five months before the cause came to trial upon the merits. In support of this view of the law, we have a decision of our Federal supreme court rendered in *Insurance Co. v. Bailey,* 80 U. S. 616, the substance of which is well and accurately stated in the syllabus to the official report of that case as follows:

"Although equity have power to order the delivery up and cancellation of a policy of insurance obtained on fraudulent representations and suppressions of facts, yet it will not generally do so, when these repre-

sentations and suppressions can be perfectly well used as a defence at law in a suit upon the policy. Hence a bill for such a delivery up and cancellation was held properly 'dismissed, without prejudice,' though the evidences of the fraud were considerable, there being no allegation that the holder of the policy meant to assign it; and suit on the policy having after the bill was filed been begun at law."

That case necessarily involved a separate law action commenced after the suit in equity was commenced; because under the Federal practice it is necessary to seek relief at law and relief in equity by separate actions. This is not necessary under our code practice, so there seems to be no reason here for seeking relief at law in a separate action from that commenced by respondent seeking equitable relief. The substance of the decisions, as we view them, is not that the mere relative times of seeking equitable and law relief are controlling as to which shall be held to be the proper remedy for the court to entertain and pursue to final judgment or decree, but whether or not the relief sought in law by the plaintiff timely furnishes to the defendant as full and complete opportunity to invoke by way of defense all that he could invoke seeking relief in a suit in equity. If this is not the law, then there would be opportunity for obligors under written instruments for the payment of money, in innumerable instances, to deprive the obligee of trial by jury, by the former's commencing a suit in equity to cancel such instrument before the obligee had occasion to, or was required to, commence his law action seeking recovery on such instrument.

We have not lost sight of the fact that appellant's answer and cross-complaint seeking recovery upon the policy was not filed until a little more than one year following the date of the policy; and that it might be argued therefrom that the filing of such answer and

cross-complaint was, in any event, no more in effect than the commencement of her law action seeking recovery upon the policy, rather than the conversion of the equity suit into a law action. We are of the opinion, however, that respondent cannot complain of this condition of affairs, unless it is thereby prevented from invoking its defense of suicide as against appellant's claim of recovery upon the policy. We think that, in any event, respondent was not deprived of making the defense of suicide, even if the filing of appellant's cross-complaint should be considered as the commencement of her law action more than a year after the date of the policy; because, in her answer and cross-complaint, she expressly waives her right to challenge the right of respondent to make the defense of suicide because of any delay in the making of such contest of the policy after the expiration of the year mentioned in the non-contestable clause of the policy, and she also waives the right to voluntarily dismiss her cross-complaint seeking recovery upon the policy; so that it becomes plain, we think, that respondent's opportunity to effectually invoke the defense of suicide as a ground of contesting the policy and defeating appellant's recovery is fully and completely preserved to it in so far as the merits of such defense are concerned.

We conclude that the trial court fell into error in denying to appellant her right of trial by jury.

The decree of the trial court is reversed, and the cause remanded to the superior court with directions to grant to appellant a trial by jury as demanded by her.

HOLCOMB and MITCHELL, JJ., concur.