[No. 34037. Department One. December 5, 1957.]

JENNIE PERRY, *Respondent*, v. HAROLD PERRY, *Appellant*.[1]

[1]Reported in 318 P. (2d) 968.

*Mary E. Burrus*, for appellant.

*Eddleman & Wheeler, Wm. R. Eddleman*, and *Arnold B. Robbins*, for respondent.

FINLEY, J.—This is an action to enforce in the courts of the state of Washington a Massachusetts execution judgment, issued in connection with a Massachusetts action for separate support under chapter 209, § 32, Laws of Massachusetts.

Jennie Perry, plaintiff, and Harold Perry, defendant, were married at Quincy, Massachusetts, in 1930. They had two children; only one of them is now legally a subject of paternal support, as the other is married. Harold Perry served in the United States Coast Guard from the time of his marriage to Jennie until 1955. The Perrys established their home in Massachusetts, and for a number of years Harold Perry was assigned to duty at various places on the east coast.

In 1945, the Coast Guard transferred Harold Perry to duty on the west coast, where he served until he left the service on October 1, 1955. In 1950, Harold Perry purchased a house in Seattle, Washington. Since that date, he has continuously maintained a home there. Jennie Perry refused to join him in Seattle. She and the children remained in Massachusetts. After his transfer to the west coast, Harold Perry made a few trips to Massachusetts, on leave. Apparently the last such trip was made in 1952.

In 1952, Harold Perry wrote Jennie Perry, asking for a divorce. On March 25, 1953, he verified a complaint, seeking a divorce from Jennie Perry, and sent a copy of it to her in Massachusetts. On April 10, 1953, Jennie Perry filed a petition for separate support in the Massachusetts probate court, Plymouth county. On May 12, 1953, Harold Perry's Washington attorney filed a *general appearance* in the Massachusetts separate support action; his divorce complaint was filed in Washington on May 22, 1953.

Thereafter, Harold Perry engaged Massachusetts counsel, and on May 27, 1953, the Massachusetts attorneys for the respective parties stipulated that Harold Perry would not proceed with the pending Washington divorce action, and would not disturb the Coast Guard allotment until the entry of a final decree in the Massachusetts separate support action. On the same day, the Massachusetts probate court entered an order, based on the stipulation, which provided (1) for temporary support in the amount of the dependent's allotment then being received by Jennie Perry from the Coast Guard ($203.00 per month); and (2) that Harold Perry be prohibited from proceeding with his divorce action until the final decree had been entered in the Massachusetts separate support action.

In February, 1954, Harold Perry's Massachusetts counsel notified his Washington attorney that he had asked for a final hearing on the merits in the separate support action, but when it had been noted on the calendar, it was stricken at the request of Jennie Perry's Massachusetts counsel. On July 21, 1954, Harold Perry's Washington counsel, being unable to secure a final hearing on the merits in the separate support action, and being unable for a period of several months to obtain answers to correspondence directed to the Massachusetts attorneys for the respective parties, notified the Massachusetts probate court, the Massachusetts attorneys for the respective parties, and Jennie Perry, by affidavit, that Harold Perry no longer considered himself bound by the stipulation, and that he was proceeding with the Washington divorce action.

Thereupon, Jennie Perry's Massachusetts attorney en-

tered a *special* appearance in the Washington divorce action, contesting the jurisdiction of the court to grant a divorce. This was called to the attention of the superior court prior to the entry of the divorce decree. On August 5, 1954, a motion for default divorce decree was heard, after full disclosure to the Washington trial court of the facts regarding the pending Massachusetts action for separate support. On August 6, 1954, the Washington superior court for King county awarded Harold Perry a divorce and decreed that Jennie Perry should receive fifty dollars per month as child support. No appeal was taken from that decree.

On September 27, 1954, pursuant to the Massachusetts practice in such matters, Jennie Perry secured an execution judgment in Massachusetts in the amount of six hundred two dollars, representing arrears in support payments then due under the temporary support order of the Massachusetts probate court. It is on that execution judgment that this suit was instituted in Washington.

On February 28, 1955, the Massachusetts court entered a decree and memorandum opinion in Jennie Perry's separate support action. The opinion reveals that the Massachusetts court was aware of the Washington divorce decree; however, the divorce was ignored. In its decree, the Massachusetts court again ordered Harold Perry to pay two hundred three dollars per month to Jennie Perry.

Subsequently, on June 27, 1955, and March 13, 1956, Jennie Perry secured additional execution judgments in Massachusetts, being payments due on the indicated dates, respectively, in the amounts of $1,827 and $2,436.

In the instant proceedings, the superior court of Washington for King county allowed Jennie Perry to amend her complaint in accordance with the more recent Massachusetts execution judgments, and entered judgment for her in the amount of the latest execution judgment. Harold Perry has appealed.

Respondent wife moved in the trial court to have appellant's proposed statement of facts stricken. The motion was denied by the trial judge on a finding that the state-

ment of facts was in substantial compliance with the rules on appeal governing same.

In her brief to this court, respondent has renewed her motion to strike the statement of facts for failure to comply with Rule on Appeal 34 (34A Wn. (2d) 36).

The statement of facts, certified by the trial court, contains a verbatim record of the proceedings on March 5, 1955. All of the oral testimony was heard on that date. The proceedings on the subsequent days are set out only by photostatic copies of the clerk's entries. These entries show all motions made by counsel, all rulings by the trial court, and the introduction of the remaining exhibits. (All exhibits are contained in the file.)

In *Goodwin v. Gillingham* (1941), 10 Wn. (2d) 656, 117 P. (2d) 959, this court denied a motion to strike a statement of facts for the following reasons:

"The trial judge, however, has certified that it contains all the material facts, matters, and proceedings occurring in the cause, not already a part of the record therein, and all of the evidence, oral and written. Furthermore,—and this, we think, should dispose of the matter—the trial judge certifies:

" 'That no amendments were proposed to said Statement of Facts except such as are embodied therein.' "

The case at bar presents a similar situation.

See, also, *Palin v. General Constr. Co.* (1954), 45 Wn. (2d) 721, 277 P. (2d) 703.

In *Northern Life Ins. Co. v. Walker* (1923), 123 Wash. 203, 212 Pac. 277, the court said:

"The question of whether or not a statement of facts should be stricken from the record, and the question of whether or not a statement of facts can properly be considered in reviewing some given claim of error, should be treated as separate questions. The former, it would seem, has reference strictly to the elimination of the statement from the record, which should not be done if it is free from defects upon its face; while the latter, it would seem, has reference strictly to the extent the statement may be available in aid of the consideration of some given claimed error or errors." (p. 212)

■ In the instant case the statement of facts was filed in good faith within the required ninety days. It is free from defects on its face, and it contains all that is necessary to dispose of this appeal. The motion to strike is denied.

We come now to the question of whether the Massachusetts execution judgments, obtained by Jennie Perry for payments due under the Massachusetts separate support orders, are enforcible in the state of Washington.

In two recent cases, the United States supreme court held that a divorce granted by a court lacking *in personam* jurisdiction over the wife could not cut off her support rights in the state of her domicile. *Estin v. Estin* (1948), 334 U. S. 541, 92 L. Ed. 1561, 68 S. Ct. 1213, 1 A. L. R. (2d) 1412; and in *Armstrong v. Armstrong* (1955), 350 U. S. 568, 100 L. Ed. 705, 76 S. Ct. 629. Under this theory of divisible divorce, formulated as a method of coping with the problems resulting from migratory divorce, the state of the wife's domicile is *permitted* to keep alive the husband's marital duty to support his wife. If authorized by their laws, the courts of the wife's domicile can enter and enforce a support decree, despite a valid *ex parte* divorce obtained in some other state. However, the decisions of the United States supreme court do not clearly indicate that such support decree is enforcible outside of the wife's domicile under the doctrine of full faith and credit.

A pertinent comment in the Columbia Law Review regarding the *Estin* case, *supra*, points out that:

"The refusal of New York to recognize that its earlier support order had been superseded by the later Nevada divorce decree was upheld on two independent grounds: (1) New York's interest in the 'livelihood and support' of the wife who had remained a domiciliary of that state and (2) the support order had vested the wife with a property right of which she could not be deprived except by a court with in personam jurisdiction over her. . . . The first ground presupposes that the Nevada divorce decree was valid in all respects but that because of its peculiar interests New York could not be compelled to recognize certain incidents of the decree—those pertaining to the economic side of marriage— in its own courts. The second ground goes on the basis that

the divorce decree insofar as it purported to affect the wife's right to support was void in Nevada itself and hence equally so in every other state." *The Scope of Full Faith and Credit to Judgments,* 49 Col. L. Rev. 153, 166 (1949).

The above-mentioned first ground for the decision in the *Estin* case seems to us to be clearly inconsistent with an application of the doctrine of full faith and credit in cases such as the one at bar. However, it is certainly not inconceivable that support decrees arising out of interstate marital disputes are unique and are proper exceptions to the full faith and credit doctrine. If this is the rule, Washington courts would determine the extent of our state's understandable social interest in the "livelihood and support" of Washington domiciliaries; and, thus, the amount of support our domiciliary is able to pay. On the other hand, Massachusetts courts would determine the extent of that state's understandable social interest in the "livelihood and support" of Massachusetts domiciliaries; and thus, the amount of support they need. This poses an irreconcilable conflict when, as here, the state of the wife's domicile decrees she needs more than the state of the husband's domicile decrees he is able to pay. The two judgments stand in opposition to each other—both valid in their respective states—precluding the application of full faith doctrine in either state.

The second ground mentioned above as the basis for the *Estin* decision involves legal principles which are consistent with the application of the doctrine of full faith and credit in cases such as this one. The support provisions of the Washington divorce decree were determined without *in personam* jurisdiction over the wife. If this interpretation of the basis for the *Estin* decision is the rule, the support provisions of the Washington divorce decree would be unenforcible as a limitation on the wife's rights in any state, including the state of Washington. The only judgment enforcible as to both parties would be the one in Massachusetts—which is the typical conflicts-of-laws case. And, under the full faith and credit doctrine, we would be required to examine the wife's Massachusetts judgments in the light

of the law of that forum to determine their enforcibility in Washington.[2]

We are not prepared to concede that the first ground for the *Estin* decision was mere surplusage. In fact, we believe that rationale is compelling in this case.[3]

We are faced with a situation in which the ex-husband is domiciled in Washington, and the ex-wife is domiciled in Massachusetts. We recognize that Massachusetts is "rightly concerned lest the abandoned spouse be left impoverished and perhaps become a public charge." *Estin v. Estin, supra.* It is equally apparent, however, that Washington has legitimate concern for its domiciliary who has remarried and presently has a wife and two children to support in this state.

The Massachusetts court decreed that its domiciliary needs support payments in the amount of two hundred three dollars per month. The Washington court decreed that its

---

[2]There should be some means available to protect the welfare of Washington domiciliaries and this state's social interest therein. Perhaps, when a foreign domiciliary commences an action in Washington to enforce alimony or support provisions of a foreign decree which requires greater payments than a Washington domiciliary is able to meet, the latter could: (1) cross-complain and pray for a modification as to future payments by the Washington court of the foreign court's decree; or (2) if the foreign jurisdiction does not permit modification of alimony or support provision, a Washington domiciliary could cross-complain for a redetermination of the alimony award made in the Washington divorce decree—both parties presently being before the court *in personam*. This latter approach would mean that there would be two decrees providing for monthly payments of differing amounts, each rendered by a court with personal jurisdiction over the parties. The situation would squarely raise the full-faith-and-credit question as to which jurisdiction, if either, had to give way to the other's determination.

[3]In *Vanderbilt v. Vanderbilt* (1957), 354 U. S. 416, 1 L. Ed. (2d) 1456, 77 S. Ct. 1360, the court based its decision on jurisdictional grounds as emphasized in the *Estin* case, and held that the state of New York, without violating the full faith and credit clause, could enter a support decree after a valid *ex parte* divorce in Nevada. The decision does not touch on the problem of the enforceability of the New York support decree in Nevada, which would be analogous to the problem presented in the case at bar. As we read the *Vanderbilt* case, it does not indicate that the United States supreme court presently intends to discard the "policy" ground of the *Estin* case.

domiciliary is able to make support payments in the amount of fifty dollars per month. The financial circumstances of the parties do not appear in the record, and this court has no "crystal ball" it can use to determine which support decree is *right*. We might state parenthetically, however, that the record before us indicates the Massachusetts probate court was well aware of the interests of its domiciliary and of the opportunity presented for the protection and possible advancement of those interests.

■ In any event, it is our view that, until the United States supreme court holds otherwise, the only decree which is valid and enforcible in the state of Washington against the Washington domiciliary is the Washington decree which fixed support payments in the amount of fifty dollars per month. On the other hand, if (a) we have misconstrued the *Estin* case, *supra*, and (b) we are required to apply the doctrine of full faith and credit, we reach the same result in the instant case for the reasons we shall subsequently discuss.

In *Griffin v. Griffin* (1945), 327 U. S. 220, 90 L. Ed. 635, 66 S. Ct. 556, the husband originally had appeared and contested an action for divorce. The wife had prevailed and had obtained a divorce decree which provided for alimony. Subsequently, without specific notice to the husband, the wife had procured the docketing of a judgment for alimony arrears against the husband. The wife then pursued the husband into the District of Columbia, armed with the judgment so docketed, and requested the District of Columbia court to give the judgment full faith and credit.

The United States supreme court held that the giving of notice to the husband as to the divorce action, and his appearance therein, did not dispense with the due process necessity of notice to him specifically as to the docketing of a judgment for alimony arrears. The judgment so docketed was held to be lacking in due process and, consequently, unenforcible and not entitled to full faith and credit.

Harold Perry, in the instant case, challenges the enforcibility of the Massachusetts execution judgments on the ground of lack of due process notice under the *Griffin* deci-

sion, *supra*. The trial court for King county, Washington, found as a fact that Harold Perry had not been given notice of the latest, or the third, Massachusetts execution judgment until after its issuance.

■ We conclude there was a lack of due process notice in the instant case in entering the third Massachusetts execution judgment against Harold Perry. For this reason alone, it is unenforcible and not entitled to full faith and credit. The portion of the judgment of the King county superior court involving the third execution judgment was erroneous and must be reversed.

The decision in the *Griffin* case, *supra*, is subject to one or the other of two somewhat different explanations or interpretations. (1) The docketing of judgment of accrued alimony is distinct and separate from the original divorce proceeding. It is a new action, which seeks to cut off all of the husband's defenses, except payment; and consequently, specific notice as to it is necessary in order to satisfy due process of law. (Justice Rutledge in his dissent in the *Griffin* case, *supra*, so interpreted the majority decision.) (2) The docketing of judgment for accrued alimony is a supplemental part of the alimony decree, yet additional notice must be given to the husband or such judgment is void.

The first interpretation, if applied in situations such as the one at bar, might well lead to a completely different result from that reached by application of the second interpretation. We will now discuss the possible effect of each interpretation, if applied in the factual situation presented in the instant case.

If the first interpretation is applied, *all* of the execution judgments obtained by Jennie Perry would be void and unenforcible. She is seeking to enforce these execution judgments in Washington as *in personam* judgments of the Massachusetts court. Yet, considering the execution judgments as new actions, distinct from the action for separate support, the record before us indicates that the Massachusetts court did not have personal jurisdiction over Harold Perry when it issued the execution judgments. He received only con-

structive notice of those actions; no attorney appeared to represent him (there is conflict in the evidence on that point, but the preponderance is in accord with our statement); he did not consent to the jurisdiction of the court, and the court did not find him to be domiciled in Massachusetts. (Both the petition for the execution judgment and the court orders refer to Harold Perry as "of Seattle, Washington.") Mere notice without jurisdiction does not make a judgment valid. See Restatement on Judgments, chapter 2.

Were we to accept the first indicated interpretation of the *Griffin* case, *supra*, we would remand this case to the superior court with instructions to allow Jenny Perry to amend her complaint so as to disregard entirely the supplementary execution judgments and to rely exclusively on the original Massachusetts court orders for separate support. We would further direct the superior court to grant those support orders such faith and credit as they would receive in Massachusetts.

We believe the second interpretation of the *Griffin* case is the more sound and cogent one.

Under the second interpretation of the *Griffin* case, *supra*, we believe all that is required for a valid judgment is proper notice to Harold Perry; we believe that the personal jurisdiction of the Massachusetts court over Harold Perry (by virtue of his general appearance in the separate support action) would continue to be valid in actions for support arrears under the decree. The record indicates that he had constructive notice of the first two execution proceedings; this satisfies the *notice requirement* of the *Griffin* case. Under this interpretation, the execution proceedings are merely supplementary to the main action—in the nature of an accounting of unpaid alimony due under the support decree and a determination by the Massachusetts court that it will not retroactively modify its support order. See *Williamson v. Williamson* (1923), 246 Mass. 270, 140 N. E. 799. Such supplementary proceedings (not being a new action) do not, in absence of an appearance by Harold Perry and actual litigation of his possible defenses, cut off valid defenses he

might have to liability for the accrued payments due under the support order in the main action. See Justice Rutledge's dissenting opinion in the *Griffin* case.

One defense asserted by Harold Perry is that, under Massachusetts law, his liability for separate support was terminated upon the advent of his Washington divorce. This calls for an examination of the Massachusetts law.

In *Rosa v. Rosa* (1936), 296 Mass. 271, 5 N. E. (2d) 417, the supreme judicial court of Massachusetts stated:

"Separate support is dependent on the existence of the marriage relation. Termination of that relation by a divorce decreed in another jurisdiction, valid and effectual in this Commonwealth, entitles the husband to be discharged from his liability for payments, under the decree for separate support, *which had not become due at the time of the divorce.*" (Italics ours.)

See, also, *Jelly v. Jelly* (1951), 327 Mass. 706, 100 N. E. (2d) 681, which holds that the liability for separate support of children is also terminated by a valid divorce.

Thus, if the Washington divorce is valid, it follows that, under Massachusetts law, the husband's liability for separate support ceased, except as to payments which had become due at the time of the divorce. If the Washington court had jurisdiction to grant the divorce, the decree is valid everywhere. *Williams v. North Carolina* (1942), 317 U. S. 287, 87 L. Ed. 279, 63 S. Ct. 207, 143 A. L. R. 1273.

Jenny Perry, through her Massachusetts attorney and by letter and affidavit, filed a special appearance in the Washington divorce action to challenge the jurisdiction of the court. Despite the fact that the appearance was not certified until payment of the appearance fees after entry of default judgment, her action constituted a valid appearance. See *Tiffin v. Hendricks* (1954), 44 Wn. (2d) 837, 271 P. (2d) 683, and cases cited therein. By her appearance, Jennie Perry voluntarily submitted to the court for decision all questions, both of law and fact, which were necessary to be determined by the court in disposing of her challenge to the court's jurisdiction. *State ex rel. Rothwell & Co. v. Superior*

*Court* (1920), 111 Wash. 63, 189 Pac. 556. Therefore, the jurisdiction of the Washington court to grant the divorce is not subject to dispute again in this state or elsewhere. *Sherrer v. Sherrer* (1948), 334 U. S. 343, 92 L. Ed. 1429, 68 S. Ct. 1087, 1097, 1 A. L. R. (2d) 1355; *Coe v. Coe* (1948), 334 U. S. 378, 92 L. Ed. 1451, 68 S. Ct. 1094, 1097, 1 A. L. R. (2d) 1376. See, also, *Johnson v. Di Giovanni* (1956), 347 Mich. 118, 78 N. W. (2d) 560.

As we have previously stated, the Massachusetts probate court ignored the Washington divorce when it entered its final separate support order. We are aware of the holding in *Royal v. Royal* (1949), 324 Mass. 613, 87 N. E. (2d) 850, which provides that such action is to be construed as an implied determination that the divorce was invalid. That holding is inconsistent with the first United States supreme court decision in *Williams v. North Carolina* (1942), 317 U. S. 287, 87 L. Ed. 279, 63 S. Ct. 207, and is, therefore, without authoritative value.

 Since the validity of the dissolution of the marriage is no longer open to question, it follows that, under the Massachusetts law, Harold Perry ceased to be liable for support payments when the divorce was granted. Accordingly, the second Massachusetts execution judgment is unenforcible.

Although Jenny Perry did not request the first execution until twenty days after the entry of the Washington divorce, Harold Perry has conceded in his brief that it covered payments due prior to the divorce. Hence, its enforcibility is in no way affected by the Washington divorce.

Harold Perry offered evidence to prove that certain payments had been made which were not taken into consideration by the Massachusetts court when it entered the first execution judgment. The record indicates the trial court properly considered his evidence. The trial court found as a fact, however, that the first execution judgment was for unpaid support. The evidence does not preponderate against that finding.

In accordance with the views expressed herein, the judgment of the trial court should be modified and judgment

entered for Jenny Perry on the first Massachusetts execution judgment in the amount of six hundred two dollars, together with interest thereon from September 27, 1954. It is so ordered.

MALLERY, WEAVER, and OTT, JJ., concur.

HILL, C. J., concurs in the result.

[1]Reported in 318 P. (2d) 951.