RESERVE LOAN LIFE INSURANCE COMPANY *v.* ROOT ET AL.

[No. 9,524.    Filed April 24, 1918.]

1. INSURANCE.—*Life Insurance.—Action on Policy.—Parties.— Widow of Insured.—Legal Heir.*—A woman entitled to share as a distributee of her husband's personalty is within the term "legal heirs" as used in life insurance policies, and was properly joined as a party plaintiff in an action on a life policy.  p. 451.

2. INSURANCE.—*Life Insurance.—Representations.—Fraud.—Condition of Health.—Medical Attendance.*—Where a life insurance policy provided that, in the absence of fraud, statements made by insured in answer to questions in the application should be deemed representations, and the application contained an agreement that answers therein were material to the risk, a statement made by insured that he had never consulted a doctor, when he had in fact been treated several years previous by a physician for la grippe, sour stomach and heartburn, did not necessarily show fraud, since insured might honestly have interpreted the questions as inquiring whether he had been treated for a serious disease.  p. 452.

3. TRIAL.—*Special Findings.—Failure to Find.—Remedy.—Motion for New Trial.*—Where there is proof pertinent to an issue on which the court ought to have found facts which are not found, the remedy must be by a motion for a new trial on the ground that the finding is contrary to law, as a failure to find such facts thereby impliedly finds that they are not proved.  p. 454.

4. INSURANCE.—*Life Insurance.—Action on Policy.—Representations.—Fraud.—Evidence.—Sufficiency.*—In an action on a life insurance policy, where insured had stated in his application that he had never been treated by a physician, the evidence was sufficient to sustain a finding to that effect, though insured had in fact been treated by a doctor some years previous for la grippe, sour stomach and heartburn, there being testimony that such ailments were temporary and would not seriously impair the health.  p. 455.

From Monroe Circuit Court; *Robert W. Miers,* Judge.

Action by Mary Root and others against the Reserve Loan Life Insurance Company. From a judgment for plaintiffs, the defendant appeals. *Affirmed.*

*Guilford A. Deitch, Frank G. West* and *Theodore J. Louden,* for appellant.

*Robert L. Mellen* and *Rufus H. East,* for appellees.

IBACH, C. J.—Appellees recovered a judgment against appellant on a policy of life insurance issued to Joseph P. Root, their husband and father. The cause was tried by the court without the intervention of a jury, and upon request a special finding of facts was made and conclusions of law stated thereon.

The errors assigned call in question the overruling of appellant's demurrer to the complaint, the correctness of the conclusions of law, and the overruling of its motion for a new trial.

The court finds the facts to be substantially as follows: On May 31, 1912, Joseph P. Root, then a resident of Centralia, Oklahoma, made an application in writing to the appellant company for an insurance policy of $1,000. The policy issued on said application was received and accepted by the insured. At the time of the issuance and delivery of the policy the insured was alive and in apparent good health. The annual premium on the policy was $53.60. On May 31, 1912, the insured paid to Ray and Hostetler, soliciting agents of appellant, $3.60 in cash and executed and delivered to them his note of that date for $50 due January 1, 1913, and providing for ten per cent. interest. Appellant received the first annual premium in advance. Ray and Hostetler paid it to J. D. Edmundson, at the time state agent of appellant company for the State of Oklahoma, and said Edmundson paid the same to appellant and appellant accepted it. The note was not paid and is now unpaid. The insured died April 30, 1913, in Lawrence

county, Indiana, near Tunnelton. He left as his legal heirs, Mary Root, his widow, and six children, naming them, and no other. Five of the children were minors and their mother was appointed their guardian. On May 19, 1913, appellees furnished appellant proofs of death of the insured and proofs of their interest as claimants, which proofs, as well as a copy of the application and policy, are made a part of the finding. On June 10, 1913, appellant tendered'to the mother the amount of the first annual premium with interest, and to Oren Root, one of the children, $8.15 for the first annual premium on said policy with interest. The policy has not been paid. Appellant paid to the Monroe Circuit Court $3.60 and delivered to the clerk the $50 note given by the insured to Ray and Hostetler on May 31, 1912. Once about seven or eight years prior to the finding the insured had heartburn and called upon and got some tablets therefor from Dr. Andrews. In the year 1909, the insured had a sour stomach and received medicine therefor from Dr. Matlock. In the winter of 1910 the insured had a slight attack of la grippe and called upon Dr. Matlock, for which he received medicine from Dr. Matlock. Appellant did not learn that the insured had suffered from heartburn or la grippe or had called upon a physician until May 24, 1913. Each of these, were temporary indispositions in their nature, and the insured immediately apparently completely recovered from each of them, and appeared sound and well. Neither of them seemed to affect the general soundness and healthfulness of his system, nor tended to undermine or weaken his constitution. There was no fraud in the application for said insurance.

The court concluded upon these facts that the law

was with appellee, and that they were entitled to recover $1,107.50 and costs. Appellant filed a motion for new trial, which was overruled.

The only question raised against the sufficiency of the complaint is that Mary Root, the widow, was not a "legal heir" of her husband, and was therefore improperly joined as a party plaintiff.

A widow, while not strictly an heir of her deceased husband in many instances, falls within the designation of heirs. *Glass* v. *Davis* (1889), 118 Ind. 593, 21 N. E. 319; *Wiseman* v. *Wiseman* (1880), 73 Ind. 112, 38 Am. Rep. 115. But even though she may not be a "legal heir" by virtue of her right as widow to share in the estate of the assured, yet, if she is entitled to share as distributee of her husband's personalty, she is within the term "legal heirs," as used in life insurance policies. *Anderson* v. *Groesbeck* (1899), 26 Colo. 3, 55 Pac. 1086; *Lyons* v. *Yerex* (1894), 100 Mich. 214, 58 N. W. 1112, 43 Am. St. 452; 25 Cyc 888. The complaint was not insufficient in this regard.

As material to the questions presented, we set out certain provisions of the application and policy of insurance. The application contains the following:

> "I hereby agree that each statement made herein and in Part 2 of this application by whomsoever they be written are full, true and complete, and that each of the same is material to the risk. (Part 2.)  *  *  *  5. Are you now in sound health? Yes.  *  *  *  14. Have you ever had any of the following diseases? (e) Dyspepsia or indigestion? No.  *  *  *  17. Except as you have previously stated, for what have

you ever consulted a physician or surgeon? Nothing.''

Said application further provides:

"I hereby agree * * * that the policy shall not take effect unless I am alive and in good health at the time of its delivery to me; nor then unless the first premium is paid in cash or a note for extension of time for such payment is accepted by the company.''

The policy contains the following provision:

"All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement made by the insured shall avoid this policy unless it is contained in the written application therefor.''

It is first insisted that the conclusions of law are erroneous in that the facts do not show that a prepayment of premium was waived. Under the facts found this was not necessary. The finding is that the premium was paid in advance and received and accepted by appellant.

Appellant further contends that the conclusions of law are erroneous, in that it appears from the findings that the insured suffered an attack of la grippe, for which he consulted a physician and received medicine; that having denied consulting any physician for anything, having agreed that the statements in the application were material, and appellant having no knowledge of the facts concealed, the conclusions of law should have been in its favor.

This court in a recent case (*Prudential Life Ins. Co. v. Sellers* [1913], 54 Ind. App. 326, 102 N. E. 894),

had occasion to consider a similar contract and certain alleged fraudulent answers in the application therefor, and we there held that a question in an application, as to whether the applicant had been attended by a physician within three years for any complaint, might be honestly interpreted to mean a treatment for any serious disease, and that her answer that she had not, under the evidence, warranted the jury in finding that her answer was substantially true.

In that case the inquiry was limited to three years, while in the instant case it covered applicant's entire life, which would be only a better reason for the application of the principle here. The language of the contract in that case as in the present contract expressly provided that all statements made by the insured in the absence of fraud should be deemed representations and not warranties. The trial court expressly found that there was no fraud in the application for said insurance, and therefore the answers must be construed as representations, and as such it is only necessary that they be substantially true. *Prudential Life Ins. Co.* v. *Sellers, supra.*

The finding of facts shows that the consultations with Drs. Andrews and Matlock were for temporary indispositions in their nature and did not affect the general soundness and healthfulness of the insured, nor weaken his constitution.

The facts found are admitted to be true for the purpose of the exceptions to the conclusions of law. We hold therefore that upon the effect of the answers to the questions in the application, the facts of this case are controlled by the law as laid down in the case cited, and that the court did not err in its con-

clusions of law on the facts found. See, also, *Metropolitan Life Ins. Co.* v. *Johnson* (1911), 49 Ind. App. 233, 94 N. E. 785.

It is finally insisted that the decision of the court is contrary to law. This contention is based upon the principle of law that, where there is proof pertinent to an issue on which the court ought to have found facts which are not found, the remedy must be by a motion for a new trial on the ground that the finding is contrary to law, as a failure to find such facts thereby impliedly finds that they are not proved and in such respect the finding is clearly contrary to law. *Ex parte Walls* (1880), 73 Ind. 95, 110.

There is evidence in the record that the insured was in apparent good health at the time of the application; that he was in *good health* at the time the policy was delivered; and that the appellant company received and accepted settlement in full for the first premium. The soliciting agent of appellant company testified that the insured was in apparent good health at the time of making his application and was in *good health* at the time the policy was delivered. The examining physician for appellant company, and still employed by it, testified that the tests and examinations made by him showed the insured to be in *good physical condition* and revealed no disease or ailments of any kind and his lungs and stomach appeared sound and that he pronounced him a number one insurance risk.

The Dr. Matlock referred to in the finding testified that he treated the insured in 1909 for a *temporary ailment* of the stomach from which he recovered. "He did not come back a second time." That in 1910 he

went to insured's home to see him; that the insured had what is commonly called the "grippe"; that he saw the insured three times, gave him the usual remedy for that malady; saw him afterwards. He had recovered from it. The matters were temporary ailments and he yielded readily to treatment. The ailments did not in any way affect or impair his constitution. "A man who has once had la grippe would *possibly* be more apt to take it than one who had never had it. I would not be able to say that the attack of la grippe that I treated Mr. Root for would have any particular effect on his next attack. I would not say that one that has had a *severe* attack of grippe is more apt to have an attack of grippe than one who has never had it."

Dr. Andrews testified that he treated the insured in 1907 and 1908 for heartburn, which is nothing more or less than a sour stomach. "There is nothing serious about that kind of trouble. Most everybody has it. Heartburn is a mere symptom. The remedy given corrected the symptom." Witness saw the insured along until he moved away in 1912, and so far as he knew there was no subsequent trouble.

Dr. Truit, as a witness for appellant, testified that the physical condition of the insured would *largely* determine his insurability. Not every applicant having suffered from heartburn or la grippe would be rejected. If an applicant had fully recovered from la grippe, his application would not be rejected.

Without setting out more of the evidence, it is sufficient to say that there is evidence tending to 4. support the decision of the trial court, under the principles of law heretofore announced,

and hence the court did not err in overruling the motion for a new trial.

Judgment affirmed.

NOTE.—Reported in 118 N. E. 917. Insurance: who are "heirs" within meaning of life policy, 30 L. R. A. 593; effect of honest mistake in answer as to health of insured warranted by him to be true, 15 L. R. A. (N. S.) 1277; what constitutes "attendance of physician" in representation by applicant for life insurance, 3 Am. St. 637. See under (1) 25 Cyc 888, 915; (2) 25 Cyc 817; (3) 25 Cyc 944.