DR. FREDERICK BROWN, Respondent, v. INTER-STATE BUSINESS MEN'S ACCIDENT ASSOCIATION OF DES MOINES, IOWA, a Corporation, Appellant.

(224 N. W. 894.)

Opinion filed April 8, 1929.

*B. F. Whipple* for appellant.

*Harry E. Dickinson* for respondent.

BURR, J. The plaintiff who is a physician, had applied to defendant for a policy of health and accident insurance, on a form prepared by the defendant. The certificate of membership, or insurance policy,

was issued January 7, 1926 and the application is made a part thereof. In January 1927 plaintiff underwent a surgical operation for the removal of a pyloric ulcer. This condition brought him within the provisions of the policy requiring the defendant to make him stated weekly payments. In accordance with the terms of his policy he presented proofs of loss, but the company refused to make any payment, and cancelled the policy, on the ground that it had been induced by the plaintiff to issue this policy upon representation, statements and warranties which he made in his application, and "that such representations so made by plaintiff in his written application were false, and the said plaintiff then and there knew the same to be false and the said plaintiff then and there knew that such statements were made for the purpose of, and the said plaintiff did then and there, obtain such policy."

Action was brought and at the conclusion of the plaintiff's case in the district court both sides moved for a directed verdict. The court took the matter under advisement and then made findings of fact, and conclusions of law favorable to the plaintiff. From the judgment entered thereon defendant appeals.

The specific portion of the application which is said to be false is shown by these questions and answers:

"(9) Are you in sound condition mentally and physically?" "Yes."

"(10a) Have you ever had any disease of the heart—gall bladder—kidneys—appendix—stomach—?" "No."

"(13) What medical attendance have you had in the past five years?" The plaintiff answered this naming a physician in Carrington who treated him for a carbuncle.

The evidence consists of the testimony of the plaintiff himself and Dr. Schoregge, one of the doctors who assisted in the surgical operation. The plaintiff testified that in May 1925 he had had some bilious spells and at one time he made a visit to Bismarck and called at the Quain & Ramstad clinic and one of the doctors there told him "he thought my trouble was due to the gall bladder." Later he was visiting there and the doctor said he "would like to examine me." He said they gave him some advice as to diet, but he paid no attention to their statement of the symptoms or to the instructions as to diet as he stated he considered himself in fine physical condition; that he paid no attention to it and in fact forgot that he had ever been there. He

testified the reason that he stated that he had no gall bladder trouble and failed to tell about the examination at the clinic was because he had overlooked it entirely not considering there was anything to it. He also testified that there was no relationship between these bilious attacks and the subsequent operation for ulcer. Dr. Schoregge, who assisted in the operation, testified that at the time they operated for the ulcer they found the gall bladder had adhesions, but there is no connection whatever between the condition of the gall bladder and the ulcer. He told of the visits plaintiff made to the clinic prior to the application and says the clinic did not give the plaintiff any treatment of any kind in connection with the gall bladder trouble.

There are eight specifications of error. The first deals with alleged errors of the court in admitting two receipts, exhibits 3 and 4—the sole objection being that they are incompetent, irrelevant and immaterial,—and certain letters, exhibits 5, 6, and 7—the ground being that they are incompetent, irrevelant and immaterial, unless other parts of the correspondence are also offered.

"A mere general or 'blanket' objection to testimony as a whole does not avail, when part of the testimony is admissible. It is also well established that an objection that evidence is 'irrelevant, incompetent and immaterial' does not suffice, if the evidence is admissible for any purpose."

6 Jones, Ev. 4991 et seq.; Krogh v. Great West Life Assur. Co. 55 N. D. 722, 728, 214 N. W. 899; Cole v. Johnson, 103 Or. 319, 205 Pac. 282; Wolfe v. Scott, 275 Pa. 343, 119 Atl. 468; Norris v. Lynch, 26 Ga. App. 398, 106 S. E. 801. Exhibits 3 and 4 were receipts issued for premiums paid and were competent to prove payment and material to show the policy was in force. Exhibits 5, 6, and 7 were letters relating to receipts of proof of loss, and refusal to pay, were competent as being written by defendant, and were material because it was necessary to prove refusal to pay. There was no error in overruling such an objection.

Specification No. 2 deals with the sustaining of objection to certain cross-examination of the plaintiff. The defendant was questioning the plaintiff as to the diagnosis of his condition when the application was made, and tried to show his views were not in harmony with statements made by Tice on "Practice of Medicine" and Cabot on "Physi-

cal Diagnosis." The witness had not based his opinions upon the writings of these experts. The defendant attempted to introduce the statements of these authorities to contradict the opinions and answers made by the witness. Though "it is permissible . . . to cross-examine a medical expert on the theory of the medical works from which he claims to have based his opinion," yet "it is not permissible to use medical books in opposition to medical expert testimony given upon the stand for the very good reason that the authors are not under oath, are not subject to the test of a cross examination, and the defendant is entitled to be confronted with the witnesses against him." See State v. Shahane, 56 N. D. 642, 649, 219 N. W. 135; Dolan v. O'Rourke, 56 N. D. 416, 217 N. W. 667; State v. Brunette, 28 N. D. 539, 150 N. W. 271, Ann. Cas. 1916E, 340.

Specifications Nos. 3 to 7, inclusive, are based upon the making of the findings of fact, the conclusions of law, the order for judgment and the entry of judgment in favor of the plaintiff. They are all based upon the theory of lack of evidence and will be considered in connection with the 8th specification to the effect that the evidence is not sufficient to justify a verdict for the plaintiff, and that on the evidence judgment should have been directed for the defendant.

These specifications of error No. 3 to 8 are confined to the questions quoted from the application, the answers thereto, and the testimony elicited with reference to them. It is true, as defendant alleges, that the answers were not correct. The surgical operation performed on the plaintiff a year after the policy was issued shows that for sometime prior thereto he had had some affection of the gall bladder and the testimony shows that this condition must have existed at the time he made his application. It is also true the plaintiff had not fully answered question No. 13. Not only had he consulted the physician at Carrington but he had been at the clinic in Bismarck nine months before the application was made. True he does not say specifically that the doctor in Carrington was the only doctor he consulted; but the answer required him to give the names of all. It is the claim of the plaintiff however, that his answers given to questions 9 and 10a were in fact true as he was answering according to his best judgment based on conditions known at that time; that he did not know of any trouble of the gall bladder; that he is a physician himself and did not

attribute his bilious attacks to such source; that any statement or examination given by the Bismarck doctors was merely casual, made no impression upon his mind, did not cause him any concern and had entirely escaped his memory; and even though it may be his answers were not true nevertheless they did not amount to misrepresentations, that they were not known to be false and were not given with the intent to deceive. To this the defendant answers that these statements were made with intent to deceive and in any event the matter misrepresented "increased the risk of loss." The policy contains this provision:

"The application, a copy of which is hereinafter set out, is made a part of this policy which shall be deemed to have been issued in reliance upon the truth of the statements contained in the application."

There is nothing in the application which says the applicant warrants the truth of the statements made therein, and the policy has this provision "no statement made by the applicant for insurance not included herein shall void the policy or be used in any legal proceedings hereunder."

Section 6501 of the Compiled Laws says:

"No oral or written misrepresentation made in the negotiation of a contract or policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss."

Thus it is that every untrue statement is not necessarily material. When statements are shown to be incorrect and not literally true the burden is upon the applicant to show there was no intent to deceive and that it did not increase the risk of loss. As said in Union Indemnity Co. v. Dodd (C. C. A. 4th) 55 A.L.R. 735, 21 F. (2d) 709. "An applicant for insurance owes to the company the same good faith which he may rightly demand of it." A policy of insurance is a contract, governed by the same rules as govern any other contract except so far as they may be modified by statute. Defendant cites the case of Mutual L. Ins. Co. v. Hilton-Green, 241 U. S. 613, 60 L. ed. 1202, 36 Sup. Ct. Rep. 676. Here the court says:

"Material incorrect representations in the application for a policy of life insurance, which is made an essential constituent of the policy,

if known to be untrue by the assured when made, invalidate the policy without further proof of actual conscious design to deceive."

It is the contention of plaintiff however that the statements are not "made an essential constituent of the policy," that he was not aware of any misstatements so far as his physical condition was concerned, that the evidence does not show the condition of gall bladder disclosed at the time of the operation in 1927 was present at the time he made the application the year previous, that such symptoms as he had at the time did not necessarily indicate gall bladder trouble, that while the doctors in the clinic may have suggested to him that posssibly there was an affection of the gall bladder it was done in such a casual way as to make no impression upon his mind, therefore he did not know his statement relative thereto was untrue. The trial court took this view of his testimony. Dr. Schoregge confirms this view to a large extent. As said in Brown v. Continental Casualty Co. 161 La. 229, 45 A.L.R. 1521, 1526, 108 So. 464:

"We have no doubt that, when Dr. Brown made application for the policy of insurance, he believed that his headaches and spells of insomnia—if he thought of them at all—were not of sufficient importance to be mentioned in the application. It is not denied that he was a reputable physician and an honorable man."

As held in Donahue v. Mutual L. Ins. Co. 37 N. D. 203, L.R.A. 1918A, 300, 164 N. W. 50, the answers of the applicant in his application for insurance "must receive a reasonable interpretation" and "his answers must not be so construed as to compel him to be his own insurer." This is applicable to the case at bar. But it is said he must have known there was some consultation between him and the doctors at the clinic and therefore when he answered question No. 13 he was not telling the full truth, and plaintiff's explanation of this is that he did not consider he had consulted the doctors at the clinic; that it was a casual meeting which made no impression upon his mind; that he always considered himself in full health and the only time he could recall when he had consulted a doctor was the time that he treated with the Carrington doctor for the carbuncle. This court held in Plotner v. Northwestern Nat. L. Ins. Co. 48 N. D. 295, 183 N. W. 1000, that the failure of an applicant to "name one instance where she consulted a physician, and further failed to state what, if any, disease she then

had, as informed thereof by the physician," was merely "a representation and not a warranty." In Modern Woodmen v. Hall, — Ind. App. —, reported in 121 N. E. 835, the court says:

"Answers . . . will not be considered as warranties unless they are clearly shown by the form of the contract to have been so intended by both parties."

Plaintiff cites the case of Mutual L. Ins. Co. v. Geleynse, 241 Mich. 659, 56 A.L.R. 702, 217 N. W. 790, but here the applicant had treated with "a practitioner" for a long period of time, had taken some fifteen treatments from him, covering a period of two months and for a matter which proved to be the cause of his death. It is clear from that case that the failure could not have arisen through oversight or forgetfulness but must have been a deliberate omission, and that the subsequent attempt to obtain life insurance must have been based upon a consciousness that he was in a critical condition.

The case differs materially from that of Van Woert v. Modern Woodmen, 29 N. D. 441, 151 N. W. 224, cited by defendant. In this case cited the policy was issued by a fraternal beneficiary society. His answers were warranties by the express terms of the application, and the applicant omitted to tell of treatments given by various doctors. The evidence showed the applicant had been treated by physicians in Minot, St. Paul, Minn. and Baltimore, Maryland for an affection of the eye, that he was operated on for "tumor of the pituitary body" and that his death was the direct result of this tumor. It was held this invalidated his policy. The case cited is no authority in the case at bar. In United States Health & Acci. Ins. Co. v. Bennett, 32 Ky. L. Rep. 235, 105 S. W. 433, it is said:

"The materiality of a statement contained in an insurance application depends upon whether reasonably careful and intelligent persons would regard the fact communicated at the time of effecting the insurance as substantially increasing the risk insured against."

And then proceeds to state:

"A statement in an insurance application that insured had never had any disease or infirmity when, in fact, he had at different times prior to the application suffered from slight attacks of piles, is not sufficiently material to invalidate the policy."

This statement is made in view of the fact that the bleeding there-

from produced septicaemia and this septicaemia was the cause of death. In Cunningham v. Penn Mut. L. Ins. Co. 152 La. 1023, 95 So. 110 the court says:

"It is entirely possible for answers to such questions to be knowingly untrue from a literal standpoint, and yet not fraudulent, for the applicant may, in good faith, have considered the facts not of sufficient importance to report, especially in view of the law, as announced by decision of this court and sustained by the jurisprudence of the other states, to the point that inconsequential illnesses do not have to be disclosed, even though they may have occasioned the attendance of a physician."

The appellant cites the cases of Beard v. Royal Neighbors, 53 Or. 102, 19 L.R.A.(N.S.) 798, 99 Pac. 83, 17 Ann. Cas. 1199; Security Ben. Asso. v. Webster (Tex. Civ. App.) 230 S. W. 219; Beckman v. National Council, K. L. S. 61 Mont. 512, 204 Pac. 487; Modern Woodmen v. Hall, 190 Ind. 493, 130 N. E. 849; Modern Woodmen v. Hall, — Ind. App. —, 121 N. E. 835. In each of these cases the policy was issued by a fraternal society and the representation was made an express warranty. Appellant also cites Metropolitan L. Ins. Co. v. Brubaker, 78 Kan. 146, 18 L.R.A.(N.S.) 362, 130 Am. St. Rep. 356, 96 Pac. 62, but here the statement or answer is made an express warranty, and other jurisdictions follow the general rule that false statements expressly made warranties, void the policy.

But it is said that even if the misrepresentations were not made with intent to deceive nevertheless they materially "increased the risk of loss," special stress being laid on the fact that the answer to Question 13 did not include the interviews at the clinic prior to the application. The question, as stated before is, "What medical attendance have you had in the past five years?" Construing the testimony most strictly against the plaintiff it does not show "medical attendance." Mere casual conversation, even definite questioning, does not constitute medical attendance. As said in Schofield v. Metropolitan L. Ins. Co. 79 Vt. 161, 64 Atl. 1107, 8 Ann. Cas. 1152:

"Life Insurance—Warranties—Previous Consultation with Physician.—Merely calling at the office of a doctor for some medicine to relieve a temporary indisposition or for a mere examination to ascertain if there is any ailment or complaint about the person and for nothing

more, is not a consultation with a physician within the meaning of a question asked by the medical examiner for a life insurance company as to whether an applicant for insurance has consulted any other physician."

In this case cited the question asked was "Have you consulted any other physician?" The answer was "No." The insurance company produced a physician who testified "that the insured came to him to be examined, and that on that occasion he did examine him superficially; that the insured said to him that he came to him for the examination because he had been told that he had trouble with his lungs and he wanted another examination. No charge was made for the examination, nor did the doctor advise him to do anything, until shortly before his death, long after the insurance was taken out. The doctor distinctly states that he was not consulted by the insured before the claimed answer, and that he did nothing but examine him."

If this be not enough to constitute "consultation" it certainly is not proof enough for "medical attendance," and in the case at bar no more, if as much, medical attention was received. In addition there is no proof showing how the failure to state the visits to the clinic increased the "risk of loss." It is the holding in this state that warranties are misrepresentations so far as the general term "misrepresentation" is used in § 6501 of the Compiled Laws, but whether warranties necessarily avoid a policy issued by a fraternal benefit society is not determined by this court since the adoption of § 5061a of the Compiled Laws of 1913 which says, among other things:

"Such societies shall be . . . exempt from all provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law hereafter shall apply to them unless they be expressly designated therein."

Van Woert v. Modern Woodmen, 29 N. D. 441, 151 N. W. 224, decided since this law was adopted, expressly declines to pass upon whether a breach of the warranty ipso facto voids the policy—as the cases cited from other jurisdictions hold—but shows that § 6501 would otherwise apply because of the increase of risk even if the insured could avoid the effect of a breach of the warranty in itself. Soules v. Brotherhood of American Yeomen, 19 N. D. 23, 120 N. W.

760, was decided before this statute was adopted and under one materially different.

The burden of proof is on the defendant, and while "increase of risk" may be a question of law, there must be something on which to predicate it.

The defendant offered no testimony. No one says that if the names of all the other doctors had been given or that if the company had been told there had been some suspicion of gall bladder trouble the application would have been rejected. It is true that in exhibit 7 written after the receipt of proofs of loss the chief clerk of defendant's claim department says "You warrant no stomach trouble in your application for membership, and it is certain that had we known your previous medical history your application for membership would have been rejected." There is nothing shown upon which this is based—that any consulting physicians for the defendants so stated, or that any officers of the company so stated. The trial court found from the evidence "that the inflammation of the gall bladder which the plaintiff had prior to the making of the application and the issuance of this policy herein was a mere trivial and transitory condition and not of a serious or permanent character; that there is no connection between the inflammation of the gall bladder and the pyloric ulcer which caused the claim of loss herein."

This is shown by the testimony of the plaintiff and his witness and there is no evidence in opposition thereto. The court also found:

"That there was no intent to deceive on the part of the plaintiff herein or fraud in the procurement of the policy; that the failure of the plaintiff to disclose his prior visit to the clinic in answering the questions in the application was not done with any fraudulent intent; that the information which was withheld did not increase the risk of loss."

Upon review of the whole case we find that judgment should be affirmed. And it is so ordered.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.