[No. 23225. *En Banc.* February 16, 1932.]

LAURA A. HOUSTON, *Respondent,* v. NEW YORK LIFE
INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 8 P. (2d) 434.

612

*Wright & Catlett,* for appellant.

*J. L. Corrigan,* for respondent.

MILLARD, J.—This is an action by the beneficiary thereunder to recover upon a reinstated life insurance policy. To the insured, late husband of the plaintiff beneficiary, the defendant company on April 8, 1927, issued its policy of life insurance. Because of non-payment of the annual premium due July 16, 1927, the insurance lapsed. On October 18, 1927, the plaintiff's husband signed an application, reading as follows, for reinstatement of the policy:

"(1) Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this policy was issued? (If not give details.) Ans. Yes.

"(2) Within the past twenty-four months have you had any illnesses or have you consulted or been treated by any physician or physicians? (If so, give full details including nature, date and duration of each illness, the name of each physician, and the dates of consultation or treatment.) Ans. April 1, 1927, one week with grippe. Dr. Ellis, Ketchikan, made one call.

"(3) Has any company or Insurer, within the past 24 months, examined you either for, or in anticipation of, an application for life insurance, or for the reinstatement of life insurance, without issuing or reinstating such insurance? (If so, give name of each Company or Insurer.) Ans. No.

"If the evidence of my insurability is satisfactory to the Company and it has received all sums the policy requires to be paid for reinstatement, then, and not until then, said policy shall be deemed reinstated. If said policy is not so reinstated, I agree to accept return of all sums paid in connection with this application, without interest.

"I hereby certify that the foregoing answers are full, complete and true, and agree that the Company believing them to be true shall rely and act thereon."

The defendant company approved the application and reinstated the policy.

On November 27, 1928, the insured died of a disease of the heart. Due proof of death was furnished to the company. The company, claiming it had discovered that the insured falsely answered the above quoted questions in his application for reinstatement of the policy, and that the insured so answered with intent to deceive, refused on February 5, 1929, to pay the insurance.

The company tendered to the plaintiff the amount of the premiums paid upon the policy from the time it was reinstated. The tender was refused by the plaintiff, who thereupon commenced an action to recover upon the policy. Trial of the cause to the court and a jury resulted in verdict in favor of the plaintiff. The defendant's motion for judgment notwithstanding the verdict was granted. On plaintiff's appeal, the judgment of dismissal was reversed and the cause remanded with direction to the superior court to pass on defendant's alternative motion for a new trial. *Houston v. New York Life Insurance Company,* 159 Wash. 162, 292 Pac. 445. The motion for a new trial was denied and judgment entered on the verdict in favor of the plaintiff. The defendant has appealed.

Contending that the court was without authority to settle and certify a second statement of facts,

respondent has interposed a motion to strike the statement of facts.

The present appellant, following the entry of the judgment after denial of its motion for a new trial, served and filed a new statement of facts. It was, except for the incorporation therein of exceptions taken by the present appellant to certain instructions given to the jury, an exact copy of the statement of facts prepared by the respondent on her appeal from the judgment of dismissal. *Houston v. New York Life Insurance Co.*, 159 Wash. 162, 292 Pac. 445.

This was not violative of the rule (Rem. Comp. Stat., § 388), that only one statement of facts can be "settled or certified after the rendition of the final judgment in the cause." The former appeal was prosecuted by the present respondent from the final judgment of dismissal. That judgment was reversed. The present appeal is from another and final judgment entered on the verdict in favor of the respondent. Though the facts are the same, there are two different and distinct judgments, hence it was the right of the appellant to propose a statement of facts, though literally a copy of the statement of facts in the former appeal, and incorporate therein all of the exceptions of which it now seeks to avail itself. Being a respondent on the prior appeal, the now appellant could not then urge the errors of which it now complains on this appeal. There was not any necessity for the present appellant to then, by proposed amendments, have included in the statement of facts the exceptions to the instructions.

"If upon an appeal by one party upon the judgment-roll the judgment is reversed and the judgment ordered entered upon the findings in his favor, the other party may, by an appeal upon a proper record, present for consideration exceptions taken by him on-

the trial of the action." *Lambert v. Bates,* 148 Cal. 146, 82 Pac. 767.

"As it is only when upon the second appeal the record presents the same matters, either of fact or of law, upon which the determination of this court was rendered at the former appeal, that that determination is held to be final, it follows that, if there is presented, upon the second appeal, a different state of facts or any errors that were committed by the trial court which were not presented in the former record, this court is at liberty to consider them as fully as though presented upon a first appeal. In case, therefore, the respondent upon the first appeal shall afterwards appeal from a judgment rendered against him on a second trial in which the same errors were committed as were committed at the first trial, he will not be precluded from having them considered by this court, even though the effect thereof should be a reversal of the second judgment, and indirectly a determination by this court that the first judgment of the court below should have been in his favor.

"Section 650 of the Code of Civil Procedure provides that a party who desires to have the exceptions taken at a trial settled in a bill, may, within ten days after receiving notice of the judgment, prepare a draft thereof, and have the same settled by the judge. A judgment is the final determination of the rights of the parties to an action or proceeding, and as there can be only one final judgment in an action, if for any reason a judgment that has been entered is vacated, and another judgment entered in lieu thereof this last judgment becomes the only one in the case, and the notice of its entry is the point of time from which the right to have a bill of exceptions settled begins to run. For this purpose there is no distinction between a judgment rendered by the trial court upon its original determination of the cause and a judgment which it enters in obedience to the direction of this court after an appeal; and a judgment entered by it in obedience to such direction has no greater sanctity upon an appeal than if it had been entered under the direction of this court to try the cause anew, and render a judgment in accordance with the opinion of this court. If

in either case any errors have supervened prior to the entry of the judgment, and which conduced thereto, that were not presented in the record upon the former appeal, this court is not precluded from their examination. If the findings of fact upon which the judgment rests are based upon evidence that was improperly admitted, the party against whom the judgment was rendered is entitled to have those errors corrected. The statute permits an appeal from a judgment by any party who is aggrieved thereby, and it also permits him to have any exceptions taken at the trial which he desires incorporated in a bill of exceptions settled by the judge. It also makes all bills of exceptions taken and filed a part of the judgment-roll (Code Civ. Proc. sec. 670), and requires the appellant to bring to this court upon an appeal from the judgment a copy of the judgment-roll. (Code Civ. Proc. sec. 950). If upon such appeal there are found in the record matters which were not determined upon the former appeal, he has the right to be heard thereon. . . . The present case . . . presents a bill of exceptions containing matters directly affecting the findings of fact upon which the judgment rests, and as those matters were not before the court upon the former appeal, the 'law of the case' has no application.'' *Klauber et al. v. San Diego Street Car Co.*, 98 Cal. 105, 32 Pac. 876.

▋ Appellant first contends that this is an equitable cause triable to the court without a jury, hence the court erred in denying appellant's motion to discharge the jury.

Counsel for appellant argue that the allegations of the complaint as to the issuing, lapsing and reinstating the policy, and the allegations of payment of premiums, death of the insured, etc., having been admitted by the answer, there was no issue of fact to be tried by a jury, and Rem. Comp. Stat., § 314, is not applicable; that appellant's cross-complaint for the rescission of the reinstatement of the policy and its cancel-

lation, was an independent equitable action which, under Rem. Comp. Stat., § 315, should have been tried to the court without a jury.

The pertinent statute reads as follows:

"An issue of fact, in an action for the recovery of money only, or of specific real or personal property shall be tried by a jury, unless a jury is waived, as provided by law, or a reference ordered, as provided by statute relating to referees." Rem. Comp. Stat., § 314.

"Every other issue of fact shall be tried by the court, subject, however, to the right of the parties to consent, or of the court to order, that the whole issue, or any specific question of fact involved therein, be tried by a jury, or referred." Rem. Comp. Stat., § 315.

The respondent commenced a law action for recovery of money upon a policy of insurance. She demanded a jury trial and paid the jury fee. The appellant pleaded, as a separate and affirmative defense and by way of cross-complaint, the alleged fraud—false and misleading statements by the insured in his application for reinstatement of the policy of insurance—of the insured, and prayed for the rescission of the reinstatement of the policy and cancellation of the policy.

In *Northern Life Ins. Co. v. Walker*, 123 Wash. 203, 212 Pac. 277, we said that "the filing of such a cross-complaint in a law action under our code practice is in substance the same as commencing a suit in equity seeking similar relief." We held, however, that, where the beneficiary under a policy of life insurance commences a law action for recovery upon the policy, the beneficiary can not be divested of the right to have her cause submitted to a jury by the defendant's filing of a cross-complaint for cancellation of the policy.

In support of the rule enunciated, we cited *Biermann*

*v. Guaranty Mutual Life Ins. Co.*, 142 Iowa 341, 120 N. W. 963, which is on all fours with the case at bar. There the plaintiff brought an action to recover upon a policy of insurance. The insurer contested the action on the ground that the insured, by false statements and deceit, imposed upon the insurer's medical examiner and thus fraudulently secured from him a favorable report upon the application, on the strength of which report the policy was issued. There, as in the case at bar, the insurer prayed for a rescission and cancellation of the policy, and contended that the court erred in refusing to try the matters alleged in the cross-complaint as in equity. On appeal, the court held that, where a court of law has obtained jurisdiction of a controversy involving an alleged fraud, if the remedy appears to be adequate and complete, equity will not interfere. The court said:

"Error is assigned upon the refusal of the court to separate the issues, and try the matters, alleged in the cross-petition as in equity, before proceeding with the main action. It would hardly seem necessary to go into extended argument to demonstrate the unsoundness of this claim. The defendant had been brought into a court of law to answer to an action upon its contract. If that contract had been procured by fraud or false representations, such fact was a full, complete and perfect defense to the action, and, if that defense was made good, the policy would be deprived of all vitality as fully as could have been accomplished by a decree in equity formally cancelling it. The appropriate law issue for that purpose had already been joined, and was waiting trial before the cross-bill was filed. Generally speaking, equity has no jurisdiction where there is an adequate remedy at law. 16 Cyc. 30. Of course, there is a certain field in which law and equity are said to have concurrent jurisdiction, and this jurisdiction includes a class of cases growing out of alleged accident, mistake or fraud. But even in this common field courts of equity, though recognizing the

existence of their jurisdiction, are generally reluctant to exercise it where the remedy at law appears to be adequate and complete. *Gorman v. Low*, 2 Edw. Ch. [N. Y.] 324; *Robinson v. Chesseldine*, 5 Ill. 332; *Hales v. Holland*, 92 Ill. 494; *Knight v. Hardeman*, 17 Ga. 253. This court has held that equity will not entertain an action to rescind a contract for mistake, unless it appears that an injury will result for which the aggrieved party will have no adequate remedy at law. *Morse v. Beale*, 68 Iowa 463 [27 N. W. 461]. So, too, where a court of law has already obtained jurisdiction of a controversy involving an alleged fraud, equity will not interfere. *Nash v. McCathern*, 183 Mass. 345 (67 N. E. 323); *Eaton v. Trowbridge*, 38 Mich. 454; *Sweeny v. Williams*, 36 N. J. Eq. 627. To sustain the position of the appellant herein would be to sanction a practice by which the plaintiff in every action upon an insurance policy, or, indeed, upon every simple matter of contract, may be deprived of his constitutional right to have his cause submitted to a jury.''

Whether the deceased was guilty of the fraud alleged, was a question of fact which, as we held in *Reed v. Reeves*, 160 Wash. 282, 294 Pac. 995, was a question of fact which could be determined in a law action as well as in one in equity. In *Reed v. Reeves, supra,* in which is reiterated the rule in *Northern Life Ins. Co. v. Walker, supra,* we said:

''It would thus appear that, whether there was fraud would be a question of fact which could be determined in a law action as well as in one in equity. Neither equity nor a court of law can be said to have exclusive jurisdiction in matters of fraud. If equitable relief is sought, the case would be tried as one in equity; if the remedy at law is complete and will secure to a party the whole right involved in a manner as just and perfect as would be attained in a court of equity, then the remedy at law is. adequate. In 10 R. C. L., p. 288, it is said:

'' 'To correct and relieve against mistakes, accidents and frauds, where the party has not a plain, adequate, and complete remedy at law, is and always

has been one of the principal objects and most ordinary duties of courts of equity. In fact the jurisdiction of the court of equity over these matters is probably coeval with its very existence. These subjects, however, may sometimes arise in courts of law and there be well disposed of—hence, they are commonly cited as leading examples of a court of equity's concurrent jurisdiction. But with cases of fraud, trust, or accident, when properly before it, a court of equity can ordinarily deal more completely than can a court of law. And, accordingly, where such questions are involved, a court of equity is never closed to a person unless the remedy at law is complete and will secure to him the whole right involved, in a manner as just and perfect as would be attained in a suit of equity.'

"In the same volume, on p. 274, it is said:

" 'The rule adopted in the great majority of American jurisdictions, however, is that whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury.' "

 The assignment that the court erred in admitting the testimony of witnesses as to the reputation of Mr. Houston for truth and veracity is without substantial merit.

Appellant's defense to the action was that the insured, in his application for reinstatement of the policy of insurance, with intent to induce the appellant to reinstate the policy and accept the risk, intentionally gave false answers. That is, the insured, by untruthful answers, attempted to defraud the appellant insurer.

The general rule is, as appellant contends, that, in civil actions, evidence of good character is not admissible except where character is directly in issue. However, the case at bar falls within the exception to the

rule. In *Rasmussen v. North Coast Fire Ins. Co.*, 83 Wash. 569, 145 Pac. 610, L. R. A. 1915C 1179, the assured, who was dead at the time of the trial, was charged with fraudulent acts and false swearing in his proof of loss for the purpose of securing a much larger recovery than that to which he was entitled. We said:

"We think an exception should be recognized in this case where the assured died prior to the trial and his evidence could not be procured. The jury did not have an opportunity to pass upon his credibility by observing his appearance on the witness stand. As above stated, it was charged by appellants that he had perpetrated a fraud and that in doing so he had sworn to false statements set forth in the proofs of loss. This amounted to a substantial charge of perjury. His denial of this charge could not be obtained. It seems to us that, under these circumstances, there was no error in permitting the plaintiff to show his reputation for honesty and integrity."

Appellant next assigns as error the giving to the jury of instructions Nos. 3, 4, 6 and 8.

The language of instruction No. 3, to which appellant specifically excepted, reads as follows:

"It was not in the contemplation of the parties that said Houston should disclose in his answer to those questions every consultation or treatment that he may have had from a physician irrespective of its kind or character."

Instruction No. 4, insists appellant, was incorrect in that it was left to the jury to determine from the evidence whether the insured was, at the time of the consultation, suffering from a serious illness or disease, or merely a slight or temporary one, as thereafter defined. The instruction was to the effect that it was the duty of the jury to find whether, at the time he consulted Dr. Beeson, the insured was suffering from a serious illness or disease or merely a slight and

temporary one, ''as I shall hereinafter define the term to you.'' The objection to instruction No. 6 is substantially the same as to instruction No. 4.

Instruction No. 8 reads as follows:

''I instruct you that a slight or temporary ailment or disorder is one that is merely temporary in its appreciable effect on the general health or continuance of life, yielding readily to medical treatment, while a serious illness or disease is such a one as has, or ordinarily does have, a permanent or detrimental effect on the system, although it does not necessarily refer to an illness or disease that is dangerous.''

On October 18, 1927, when he signed the application for reinstatement of his policy of insurance, Houston stated, in answer to the question whether within the past twenty-four months he had consulted or been treated by any physicians: ''Apr. 1, 1927, one week with grippe. Dr. Ellis, Ketchikan, made one call.''

On September 6, 1927, which was within the twenty-four months' period covered by the question in the application for reinstatement, Houston consulted Dr. Beeson at the office of the latter, who testified:

''Referring to my notes, his complaint showed evidence of soreness of about ten days' duration, the principal complaint being pain and tenderness in the right lower quadrant of the abdomen. His complaint was of pain and tenderness around the appendix the previous ten days. There was no history of any previous attacks, and the notes would indicate that it was of a mild nature. My diagnoses to him was a mild acute attack of appendicitis. . . . advised operation.''

Dr. Beeson's testimony is indicative of his belief that Houston's ailment was a ''mild acute attack of appendicitis.'' Houston did nothing further concerning any appendicitis affliction he may then have had until after the company had reinstated the policy. On No-

vember 14, 1927, a successful appendicitis operation was performed upon Houston. The evidence warrants the conclusion that Houston entirely recovered from that operation some months before he died on November 27, 1928 (one year subsequent to the operation), of a disease of the heart.

What Houston's version was of his consultation of Dr. Beeson, or what was his view of the extent—a temporary ailment or serious disease—of the affliction he may have had at the time of the consultation, we do not know. Houston was dead, hence could not testify. There was testimony, however, that, at the time of his application for reinstatement of the policy and up to the time of the reinstatement of the policy, he was in general good health. There is no other evidence of the condition of Houston's health or of his consulting any physician prior to the reinstatement of the policy, other than, as he stated in his application, that on April 1, 1927, he was afflicted "with grippe," and Dr. Ellis made one call.

Clearly, then, the question whether Houston made the statement in his application falsely and with intent to deceive the company, was one of fact for the jury. Though his statement was false, it was essential to the defense interposed by the appellant that Houston's answer was made with intent to deceive.

 Under our statute (Rem. Comp. Stat., § 7078), the beneficiary's right of recovery upon the policy can not be defeated, though the representations were false, unless it is further found that the representations were made with intent to deceive. *Houston v. New York Life Ins. Co.*, 159 Wash. 162, 292 Pac. 445.

The court correctly instructed the jury that no misrepresentations in the negotiation of the insurance contract by the assured shall be deemed material or shall avoid the policy, unless the misrepresentations

were made with intent to deceive. The questions as to the falsity of the answers and whether they were made with intent to deceive, being questions of fact, are foreclosed by the verdict of the jury.

Though many persons are advised to undergo an operation, some, who do not follow the advice, suffer no serious consequences because of their failure to abide by the decision of the surgeon. Whether Houston, at the time of the consultation, was convinced that he should undergo an operation or whether he deemed the soreness around his appendix a temporary disorder, we do not know. That an operation was later performed upon him, is not conclusive that, at the time of the consultation, he decided to have an operation performed. At most, it only tends to prove that an operation was necessary.

In *Ames v. New York Life Ins. Co.*, 154 Minn. 111, 191 N. W. 274, one of the grounds on which the insurer sought to defeat recovery was that there were false statements in the application. The appellant's position in the case at bar is, in effect, the same as appellant's attitude in that case. That is, that there is only one answer to the question whether the hazard it assumed was materially affected by the failure of the insured to disclose the consultation with the physician. That question, too, like the questions as to the falsity of the representation and whether, if false, the representation was made with intent to deceive, is usually one of fact for the jury.

In *Ames v. New York Life Ins. Co., supra,* the insured was asked and answered questions as follows:

"Q. Have you consulted a physician for any ailment or disease not included in your above answers? A. No. Q. What physician, or physicians, if any, not named above, have you consulted or been treated by within the last five years, and for what illness or ailment? A. None."

In that case, the application was dated May 11, 1920. On June 27, 1920, the insured was operated on for appendicitis. He died June 30th. The opinion reads, in part, as follows:

"Dr. Nauth testified that a year or more before the applicant died he visited him at his home on the farm and treated him for influenza. On examining him, he discovered tenderness in the region of the appendix and informed him that he might have an affected appendix. The attack of influenza was not serious and the doctor did not make a second call. Later on, the applicant came to the doctor's office in Winona and was examined again. His weight was more than normal, and sugar was found in his urine. He was informed that he had diabetes and advised to diet. A week later he came again. There was another examination of his urine, which then contained no sugar, and he was so informed. These are the facts upon which the first defense is based, and they present the close question in the case.

"The court read section 3300 G. S., 1913, to the jury, and instructed them that the statement that the applicant had not consulted a physician was material, and, if they found that the risk of loss was increased by reason of the answers to the questions above quoted, defendant was entitled to a verdict; also that, if the ailments described by the doctors were slight or trivial, the applicant was not required to mention them. Whether a misrepresentation materially affected the hazard assumed by an insurance company is usually a question for the jury (citing cases).

"In *Gruber v. German R. C. Soc.,* 113 Minn. 340, 129 N. W. 581, the insured died from tuberculosis. He failed to disclose that he had been treated by his physician for throat trouble. It was held that if the applicant consulted doctors, or was treated by them for temporary or trifling ailments from which serious consequences were not to be apprehended and from which he recovered, his failure to disclose such consultations or treatments would not avoid the contract. In the *Ivanesovich* case it was remarked that whether the

existence of hernia materially affects the hazard is, under statutes similar to ours, a jury question.''

In *Livengood v. New York Life Ins. Co.*, 287 Pa. 128, 134 Atl. 474, the rule is stated as follows:

''But where the misstatement has been set forth inadvertently, or the narrative.is incomplete in detail, and was made without intention of concealing the truth, a recovery is permissible, the question of good faith being for the jury.''

In *Cushman v. United States Life Ins. Co.*, 70 N. Y. 72, the assured warranted the truth of his answers. He stated that he never had a disease of the liver. The evidence disclosed that, upon several occasions, he had been treated for congestion of the liver, and that was the malady from which he died. The court said:

''By the question inserted in the application, the defendant was seeking for information bearing upon the risk which it was to take, the probable duration of the life to be insured. It was not seeking for information as to merely temporary disorders or functional disturbances, having no bearing upon general health or continuance of life. Colds are generally accompanied with more or less congestion of the lungs, and yet in such a case there is no disease of the lungs which an applicant for insurance would be bound to state.''

The instructions are not incorrect. It is true that the physical condition of the insured would largely determine his insurability. Whether every person who had consulted a physician who advised an operation because, at the time of the consultation, the patient had only one ''mild acute attack of appendicitis,'' would be rejected, is a question of fact. If the applicant fully recovered, or the indisposition diagnosed as ''a mild acute attack of appendicitis'' was, in fact, a temporary disorder of the stomach, the application would not be rejected. What happened afterwards—

the subsequent operation—was for the consideration of the jury in determining whether the ailment was, at the time of the consultation, in fact serious and whether the applicant considered it serious and, so knowing, falsely answered the question with intent to deceive the appellant.

It was not within the contemplation of the parties that Houston should disclose in his answer each and every time he consulted a physician. Temporary disorders or minor ailments not impairing one's health, or not tending to shorten life, or not rendering one more susceptible to disease, would not deter the insurer from accepting the application for insurance. At most, it is a question of fact.

It was essential, under the facts of this case, to the ascertainment of the fact whether the applicant's answer was made with intent to deceive the appellant insurer, that the jury find:

(1) Whether the answer was false; (2) whether the applicant deemed his ailment a serious or a temporary one; (3) whether, under the evidence, the ailment was or was not a serious ailment or disease. It follows that it was necessary for·the court to instruct the jury, which was correctly done, as to the meaning of temporary disorders and serious diseases.

See *Fishbeck v. New York Life Ins. Co.*, 179 Wis. 369, 192 N. W. 170.

In *Reserve Loan Life Ins. Co. v. Root*, 67 Ind. App. 448, 118 N. E. 917, the policy there in question provided that, in the absence of fraud, answers to questions in the application should only be considered representations. The insured stated in his application that he had never consulted a doctor, when he had in fact consulted a physician a number of times for la grippe, sour stomach and heartburn. It was held that the statement of the insured was not necessarily

fraudulent, for the insured might honestly interpret the statement to mean a treatment for serious diseases. The court said:

"This court, in a recent case (*Prudential Life Ins. Co. v. Sellers,* [1913], 54 Ind. App. 326, 102 N. E. 894), had occasion to consider a similar contract and certain alleged fraudulent answers in the application therefor, and we there held that a question in an application, as to whether the applicant had been attended by a physician within three years for any complaint, might be honestly interpreted to mean a treatment for any serious disease, and that her answer that she had not, under the evidence, warranted the jury in finding that her answer was substantially true.

"In that case the inquiry was limited to three years, while in the instant case it covered applicant's entire life, which would be only a better reason for the application of the principle here."

In *Krauza v. Golden Seal Assur. Soc.,* 221 App. Div. 380, 223 N. Y. Supp. 143, the cause of death of the insured eighteen months after the issuance of the insurance policy, which provided that, in the absence of fraud or misstatement as to a material fact, the policy was incontestable after the expiration of two years, was acute pneumonic phthisis, popularly termed "galloping consumption." The remote cause was pulmonary tuberculosis. The defense to the action of the beneficiary to recover on the policy was that the applicant made misrepresentations as to a material fact in answering questions as follows:

"Q. When did you last consult a physician and for what? A. Never. Q. Give name and address of the physician who attended you. A. None."

The answers were untrue. The insured consulted two physicians prior to his application for insurance. However, there, as in the case at bar, the consultations were not respecting the disease which caused his death.

In affirming the judgment in favor of the beneficiary, the court said:

"The applicant's consultation with a physician would be material as a matter of law only if the consultation were for a physical condition which left some permanent weakness or indicated a predisposition to serious malady. If the consultation were for a temporary functional disorder, without permanent effect, it might not be a material fact, and might not reasonably be thought, by an applicant to whom such a question is put as was answered by the applicant here, to have been within the intent of the question."

*Blumenthal v. Berkshire Life Ins. Co.*, 134 Mich. 216, 96 N. W. 17, 104 Am. St. 604, holds that it is not the duty of the insured, when applying for insurance, to advise the insurer, in answer to a question concerning his consultation with physicians, of each time he had consulted a physician for a temporary indisposition, but only of the times of consultation relative to a serious ailment. The court said:

"The law is settled that in a representation, contained in an application for insurance, that the insured is in good health, or that he has not been subject to illness, or that he has not been attended by a physician or consulted one professionally, the answer is to be construed as meaning, in the one case, that he has not suffered an illness of a serious nature, tending to undermine the constitution, and that a state of health is freedom from disease or ailment that affects the general soundness or healthiness of the system seriously. And as to representations as to treatment by physicians, the omission to state a treatment by a physician for some temporary indisposition does not avoid the policy."

As aptly said in *Sargent v. Modern Brotherhood of America*, 148 Iowa 600, 127 N. W. 52:

"But in the interpretation of the language used in calling for answers and in making response to such inquiries, the courts insist upon a reasonable or even

a liberal construction in favor of the assured, with a view to avoiding forfeitures on purely technical grounds. . . . Even where the inquiry is as to a specific ailment or disease it is to be interpreted as calling for an answer only where the previous attack was of a nature likely to result in impairment of health or to indicate a constitutional difficulty which might shorten life. *Rupert v. Supreme Court U. O. F.*, 94 Minn. 293 (102 N. W. 715) ; *Northwestern Mut. L. Ins. Co. v. Heimann*, 93 Ind. 24; *Mutual Ben. L. Ins. Co. v. Daviess' Ex'r*, 87 Ky. 541 (9 S. W. 812). Accordingly, this court had held a negative answer as to 'spitting or coughing of blood' was not false, unless the evidence showed that the applicant had been subject to spitting or coughing of blood in such sense as that a reasonable person might suppose some ill health or physical condition, affecting the desirability of the applicant as a risk, was indicated . . . in construing questions and answers relating to prior attendance by a physician. In response to such question it is not necessary for the applicant to disclose the occasion and circumstances of every consultation of a physician for temporary disability or indisposition, not amounting to a disease.''

''As held in *Donahue v. Mutual L. Ins. Co.*, 37 N. D. 203, L. R. A. 1918A 300, 164 N. W. 50, the answers of the applicant in his application for insurance 'must receive a reasonable interpretation' and 'his answers must not be so construed as to compel him to be his own insurer.' . . .

''In *U. S. Health & Acc. Ins. Co. v. Bennett*, 32 Ky. L. Rep. 235, 105 S. W. 433, it is said:

'' 'The materiality of a statement contained in an insurance application depends upon whether reasonably careful and intelligent persons would regard the fact communicated at the time of effecting the insurance as substantially increasing the risk insured against.'

'' And then proceeds to state:

'' 'A statement in an insurance application that insured had never had any disease or infirmity when, in fact, he had at different times prior to the application

suffered from slight attacks of piles, is not sufficiently material to invalidate the policy.'

"This statement is made in view of the fact that the bleeding therefrom produced septicaemia and this septicaemia was the cause of death." *Brown v. Interstate Business Men's Assn.,* 57 N. D. 941, 224 N. W. 894.

It was held in *Bankers Life Co. v. Hollister,* 33 Fed. (2d) 72, that an applicant for reinstatement of life insurance policy is not required to disclose the fact that he employed or consulted physicians or surgeons for slight or temporary ailments leaving no trace of injury to his health, such as ordinary colds, or inability to sleep because of occasional excessive use of intoxicating liquor.

The appellant, the insurance company, averred that, in his application for reinstatement of the policy, the applicant falsely stated that he was in good health, and that he had not been ill or employed a physician within five years prior to the time he applied for reinstatement of his policy; that, at the time the application was made, the applicant had angina pectoris. The physician who examined the insured on the morning of the day on which he died testified that he found no evidence of angina pectoris, and would express no opinion as to the cause of his death. There was no evidence that the insured had angina pectoris at any time within the five-year period. There was testimony that, because of sleeplessness caused by over-indulgence in liquor, it became necessary at times to give the insured a hypodermic of morphine. The court said, speaking through the late Judge Rudkin:

"Of the first question and answer, little need be said. The physician upon whose testimony the appellant is compelled to rely candidly admitted that angina pectoris is a disease not capable of certain and definite diagnosis, except in pronounced cases, and that there is generally great disagreement among physicians. In

the present case there was but one seizure, so far as the record discloses, the examination was rather cursory and the patient enjoyed exceptionally good health for the remainder of his life, extending over a period of about six years. Other physicians differed with the one on whom the appellant relies, and in view of all the circumstances the court below was amply justified in finding that the appellant had failed in its proof.

"Now, as to the second question and answer: The question really embodied three distinct questions: First, was the insured ill; second, was he injured; and, third, had he employed physicians or surgeons within the period of five years. The insured had been neither ill nor injured. To that extent, at least, the answer was true, and might he not well infer that the employment of physicians or surgeons related to the illness or injury concerning which inquiry was made?

"Furthermore, the application must be liberally construed in favor of the insured, and, under the weight of authority, an applicant for insurance is not required or expected to disclose the fact of employing or consulting physicians or surgeons for slight and temporary ailments which leave no trace of injury to health, such as an ordinary cold or inability to sleep because of occasional excesses, such as existed in this case. 37 C. J. 464.

"In *Hubbard v. Mutual Reserve Fund Life Ass'n* (C. C. A.), 100 F. 719, the court said:

" 'This rule was applied in *Connecticut Mut. Life Ins. Co. v. Union Trust Co.*, 112 U. S. 250, 258, 5 S. Ct. 119, 28 L. Ed. 708, to the effect that the questions and answers in an application do not ordinarily concern accidental disorders or ailments, lasting only for brief periods, and unattended by any substantial injury or inconvenience, or prolonged suffering. Indeed, they must have relation to the rule *de minimis lex non curat*, and to a sensible construction, and so they apply, ordinarily, only to matters of a substantial character. Therefore we accept the proposition of the plaintiff in error with reference to the word "consulted" found in these questions, that it might not relate to the opinion of a physician concerning a slight and temporary indisposition, speedily forgotten.'

"In *Mutual Reserve Life Ins. Co. v. Dobler* (C. C. A.), 137 F. 550, 556, this court said:

" 'In *Mouler v. Ins. Co.*, 111 U. S. 335, 4 S. Ct. 466, 28 L. Ed. 447, it was said that the application for insurance must be understood to relate to matters which have a sensible, appreciable form. In *Connecticut Mut. Life Ins. Co. v. Union Trust Co.*, 112 U. S. 250, 5 S. Ct. 119, 28 L. Ed. 708, it was said that the questions in an application do not require the appellant to tell every incident or accidental or slight disease or ailment which left no trace of injury to health, and were unattended by substantial injury or inconvenience or prolonged suffering; and in *Hubbard v. Mutual Reserve Fund Life Ass'n*, 40 C. C. A. 665, 100 F. 719, it was held that the word "consulted," found in such questions, did not relate to the opinion of a physician concerning a slight and temporary indisposition, speedily forgotten. Of similar import are the decisions of the Supreme Court of Michigan in *Plumb v. Penn Mut. Life Ins. Co.*, [108 Mich. 94], 65 N. W. 611, and the Supreme Court of Vermont in *Billings v. Metropolitan Life Insurance Co.*, [70 Vt. 477], 41 A. 516, and other decisions too numerous to require further specification.' "

We held in *Askey v. New York Life Ins. Co.*, 102 Wash. 27, 172 Pac. 887, that the falsity of representations in the application for insurance would not defeat the policy unless it should be further found that they were made with intent to deceive the insurer; that upon the insurer was imposed the burden of establishing the defense of fraudulent intent; that intent to deceive in misrepresenting past illness to be pneumonia when it was tuberculosis, made by the applicant for life insurance, who some time later died of tuberculosis, was a question for the jury. We said:

"The insured began to have trouble with his stomach and intestines in February, 1916, and had difficulty in retaining his food. In the latter part of May, 1916, he was operated on for abscess of the appendix. He never regained his health, and died in less than three

months after the operation. Among the proofs of death presented to the appellant was the affidavit of Dr. Klamke, in which he stated that he treated the insured for 'tuberculosis of the lungs—first time in 1912 (1911) —sent him to California,' that the immediate cause of his death was 'General Tuberculosis—lungs—larynx— appendix,' for which the insured had consulted him '4 years ago.' This affidavit of Dr. Klamke is the only evidence tending to show that the insured had suffered from pulmonary trouble other than pneumonia. If in truth the insured had tuberculosis, there is no evidence showing that he had knowledge of the fact, other than the natural inference that one really suffering from such a disease would probably know it. Dr. Klamke was not called as a witness, and there is no proof that he ever informed his patient that he was suffering with tuberculosis. The death certificate filed by the respondent was not proof of any disease suffered by the insured four or five years prior to death. It constituted an admission by the respondent that the statement in the death certificate was probably true. Such statement constituted *prima facie* evidence which was subject to refutation, and, even allowing it full force to establish the physical condition of the insured, it was not proof of the insured's intent to deceive the company. The weight of authority is that the proof of death of an insured is conclusive only of the fact of death, and is merely *prima facie* evidence of any statement contained as to the past health of the insured.''

In *Brigham v. Mutual Life Ins. Co.*, 95 Wash. 196, 163 Pac. 380, the applicant for insurance falsely answered the question as to whether he had consulted or been treated by any physician within a certain period of time. We held that, under Rem. Code, § 6059-34 (Rem. Comp. Stat., § 7078):

''It is not enough under this statute, to find that the representations were false. It must further be found that they were made with intent to deceive. . . . We did not intend to hold in the *Quinn* case that misrepresentation alone was sufficient, as that would be

flying into the teeth of the statute, which was referred to in the opinion followed by this observation:

" 'In view of the statute, the only fact to be determined is whether or not the representations made by the applicant were made, as the court found, without intent to deceive.'

"This language can mean nothing else than that the intent to deceive must be found as a fact. This can be the only interpretation of the statute, and if it be assumed that the *Quinn* case establishes a contrary rule it is now departed from."

In *Hoeland v. Western Union Life Ins. Co. of Spokane,* 58 Wash. 100, 107 Pac. 866, we said that mere temporary disorders were not within the contemplation of the parties to an insurance contract.

It cannot be held, as a matter of law, that, though the answers of Houston were untrue and the applicant knew them to be untrue, he intended to deceive the appellant when making such untrue representations. Under our statute, whether the misrepresentation was material and also whether it was made with intent to deceive, were questions for the jury. Those questions, under proper instructions, were by the jury resolved in favor of the respondent.

We find no reversible error in the record, therefore the judgment should be, and it is, affirmed.

BEELER, HERMAN, MAIN, PARKER, and HOLCOMB, JJ., concur.

BEALS, J. (dissenting)—In my opinion, the court erred in instructing the jury, and I therefore dissent.

TOLMAN, C. J., and MITCHELL, J., concur with BEALS, J.